PHOENIX CONTRACTORS, INC., Plaintiff-Appellant,†

v.

AFFILIATED CAPITAL CORPORATION, Defendant,

RURAL MUTUAL INSURANCE COMPANY, Intervenor-Defendant-Respondent.

Court of Appeals

*No. 03–2259. Submitted on briefs March 22, 2004.—Decided April 28, 2004.*

2004 WI App 103

(Also reported in 681 N.W.2d 310.)

† Petition to review denied 9-1-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Tristan R. Pettit* of *Petrie & Stocking, S.C.* of Milwaukee.

On behalf of the intervenor-defendant-respondent, the cause was submitted on the brief of *James J. Mathie* of Waukesha.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. This is an insurance coverage case. At summary judgment, the trial court ruled that Rural Mutual Insurance Company was not obligated to defend its insured, Phoenix Contractors, Inc., because Phoenix had failed to provide Rural Mutual with timely notice of the underlying action. Phoenix appeals. We affirm.

## BACKGROUND

¶ 2. Phoenix installed roofing on some condominiums constructed by Affiliated Capital Corporation. On December 21, 2000, Phoenix sued Affiliated in small claims court for $1518.12, the remaining amount due on the original balance of $16,699.32 for the materials and labor provided by Phoenix. Nearly one year later, on December 5, 2001, Affiliated filed a large claims counterclaim alleging that the Phoenix roofing work was defective.[1] In addition, the counterclaim alleged that there were ongoing arbitration proceedings between the parties.

---

[1] This case had an extended history in the small claims court. In its small claims answer, Affiliated denied that it owed any money to Phoenix and further stated that Affiliated was ready to prove a counterclaim against Phoenix for materials and services used in remedying Phoenix's defective workmanship. However, Affiliated failed to appear on the trial date and a default judgment was entered on May 18, 2001. Affiliated then filed a motion to reopen the default judgment on grounds of excusable neglect, asserting that its counsel had not been aware of the small claims hearing date. After argument and briefing by the parties, the small claims court granted the motion to reopen on July 2, 2001. Affiliated then filed a large claims counterclaim and the matter was transferred to the large claims division of the circuit court.

¶ 3. On March 21, 2002, Phoenix filed an amended complaint, which broadened the action to include another matter that had been the subject of prior arbitration between the parties.[2] This complaint alleged claims of breach of warranty, unjust enrichment and quantum meruit. Affiliated's answer included affirmative defenses and also incorporated Affiliated's previous counterclaim as an affirmative defense.

¶ 4. On February 27, 2003, Phoenix tendered the defense of this matter to its insurer, Rural Mutual. This tender stated that the matter was scheduled for a three-day jury trial on March 18, 2003. Discovery in the matter had closed five months earlier, in September 2002.

¶ 5. On March 6, 2003, Rural Mutual filed a motion seeking: (1) to intervene in the action, (2) to stay the proceedings to allow Rural Mutual to file and serve a counterclaim against Phoenix and a cross-claim against Affiliated, (3) to bifurcate the coverage issue from the underlying issues, and (4) to stay the underlying issues until the coverage issue had been resolved. With this motion, Rural Mutual also filed its proposed counterclaim. The counterclaim alleged that the Rural Mutual policy did not provide coverage to Phoenix because, among other reasons, Phoenix had failed to provide Rural Mutual with timely notice of the claims asserted by Affiliated. By its letter of March 11, 2003, Phoenix indicated that it had no objection to Rural Mutual's motion to intervene and to stay the proceedings pending resolution of the coverage issue. On March 14, 2003, the trial court entered an order granting

---

[2] This amended complaint was actually Phoenix's second amended complaint. An earlier amended complaint added a claim for interest.

Rural Mutual's motion. Thus, the matter did not proceed to trial on March 18, 2003.

¶ 6. On April 15, 2003, Rural Mutual filed a motion for summary judgment. In a written brief in support of its motion, Rural Mutual argued that Phoenix's fourteen-month delay in providing notice had deprived Rural Mutual of the opportunity to control the defense of Affiliated's lawsuit, to make a timely investigation of Affiliated's claims, and to conduct discovery. As a result, Rural Mutual contended that it was presumptively prejudiced.[3] Phoenix's written brief in opposition contended that Rural Mutual had not been prejudiced by the delay.

¶ 7. The trial court held a hearing on Rural Mutual's motion on June 30, 2003. The court granted summary judgment based on its determination that Phoenix's notice was untimely and, as a result, Rural Mutual had been deprived of the opportunity to be engaged in the defense of the action. In the order for judgment entered on July 17, 2003, the court further found that Phoenix had "failed to offer sufficient evidence to rebut the presumption of prejudice based upon its admitted late notice of claim."

¶ 8. Phoenix appeals.

## DISCUSSION

■

¶ 9. When reviewing a summary judgment, we perform the same function as the trial court, making our review de novo. *Green Spring Farms v. Kersten*, 136

---

[3] Rural Mutual's motion for summary judgment additionally alleged that Affiliated's counterclaim did not allege "property damage" or an "occurrence" within the meaning of the insurance policy.

Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (2001–02).[4]

■

¶ 10. An insured is required to give timely notice to his or her insurer. *Neff v. Pierzina*, 2001 WI 95, ¶ 29, 245 Wis. 2d 285, 629 N.W.2d 177. Under Rural Mutual's policy, an insured "must see to it that [Rural Mutual is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Wisconsin Stat. § 631.81, entitled "Notice and proof of loss," governs timeliness of notice. It provides,

> Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

Sec. 631.81(1). In addition, Wis. Stat. § 632.26(2) governs the failure to give notice. It provides: "Failure to give notice as required by the policy as modified by para. (1)(b) does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there was no prejudice." Sec. 632.26(2).

---

[4] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 11. When an insured's notice to the insurer is untimely, the court must decide whether the insurer was prejudiced by the insured's breach of duty. *Neff*, 245 Wis. 2d 285, ¶ 42. Where the insured fails to give notice within one year after the time required by the policy, "there is a rebuttable presumption of prejudice and the burden of proof shifts to the claimant to prove that the insurer was not prejudiced by the untimely notice." *Gerrard Realty Corp. v. Am. States Ins. Co.*, 89 Wis. 2d 130, 146–47 277 N.W.2d 863 (1979).

¶ 12. Here, Phoenix concedes that its notice to Rural Mutual was untimely under the Rural Mutual policy and the one-year provision of Wis. Stat. § 631.81. As such, Rural Mutual is presumptively prejudiced, and Phoenix carries the burden to rebut that presumption.

¶ 13. While generally the question of whether a liability insurer has been prejudiced by late notice is considered a question of fact, *Neff*, 245 Wis. 2d 285, ¶ 48, summary judgment may be granted on the issue of prejudice because of an insured's untimely notice when no genuine issue as to material fact exists and one party is entitled to judgment as a matter of law, *Fireman's Fund Ins. Co. v. Bradley Corp.*, 2003 WI 33, ¶ 59, 261 Wis. 2d 4, 660 N.W.2d 666. We therefore turn to the question of whether Phoenix provided sufficient evidence countering the presumption of prejudice to Rural Mutual and thereby raised a material issue of fact on that question.

¶ 14. Phoenix's evidence consisted of an affidavit by its counsel indicating the steps Phoenix had taken during the course of the litigation. This affidavit indicated that Phoenix had sent interrogatories to Affili-

ated, had participated in three days of arbitration with Affiliated, and "had inspected the allegedly defective roofs in order to determine if there are any leaks and if so what were the causes of those leaks," and also included the results of said investigation. The affidavit also incorporated Affiliated's counterclaim, Phoenix's answer, Affiliated's answers to the interrogatories, a letter from the arbitrator,[5] and copies of the reports provided by two experts who had inspected the properties on behalf of Phoenix.

¶ 15. Phoenix first argues that the supreme court's decision in *Fireman's Fund* mandates reversal in this case. In that case, the insured did not provide notice to the insurer until almost fifteen months after the lawsuit was commenced. *Fireman's Fund*, 261 Wis. 2d 4, ¶ 58. The insurance company argued that the late notice was prejudicial because it was given only two weeks to engage in discovery prior to the preliminary injunction hearing. *Id.*, ¶ 61. However, in rebutting the presumption of prejudice, the insured presented testimony from the insurer's litigation manager conceding that if the insurer had received notice earlier, it would not have handled things differently, it would not have done any further investigation, and it "would have denied a duty to defend on the exact same complaint even if [it] had been provided with notice only one month after the . . . lawsuit was filed." *Id.*, ¶ 62. Because the timing of the notice would not have changed the insurance company's decision to deny its duty to defend, the supreme court concluded as a matter of law that the insurance company suffered no prejudice. *Id.*, ¶ 63.

---

[5] The arbitrator's letter merely determined the scope of the arbitration. It did not address the merits of the underlying claims.

¶ 16. Here, unlike *Fireman's Fund*, the evidence provided by Phoenix does not include any concession by Rural Mutual that it's defense of the action would have been the same regardless of the tardy notice. Nor does the evidence reflect any statement by Rural Mutual as to the course of action it would have taken if it had received timely notice of Affiliated's claim. Also, unlike *Fireman's Fund*, here the deadline for discovery has long since expired. We reject Phoenix's attempt to liken this case to *Fireman's Fund*.

¶ 17. Phoenix also argues that "even if Rural had had timely notice, there is no doubt that it would have, at the very least, reserved its right to deny coverage." However, neither the evidence nor the procedural history of this case supports this statement. Rural Mutual's motion to intervene did not seek to reserve Rural Mutual's right to deny coverage. Rather, Rural Mutual sought to bifurcate issues of coverage and liability and to stay the underlying action *until the issue of coverage could be resolved.*

¶ 18. The supreme court has expressly approved this bifurcation procedure as an alternative to the reservation of rights procedure:

> To require an insurer to enter into a reservation of rights agreement in addition to proceeding within a separation framework would run contrary to the bifurcation allowed by sec. 803.04(2)(b), Stats . . . .
>
> . . . .
>
> We note that this court has endorsed the use of the separation mechanism to avoid conflicts of interest between the insured and the insurer. The separation procedure is, to some extent, mutually beneficial: The insurer is able to ascertain whether coverage exists prior to its indemnification of the insured; the insured

745

is able to ascertain prior to the insurer's undertaking of his defense whether the defense would have had any taint of a conflict of interest due to a coverage question. Here, Badger State proposed a bifurcated trial on the issue of whether coverage existed under the insurance contract.

*Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 521–23, 385 N.W.2d 171 (1986) (citations omitted).[6] Here, Rural Mutual properly invoked the bifurcation procedure. We reject Phoenix's attempt to transform this case into a reservation of rights case.

¶ 19. Phoenix further challenges the trial court's determination of prejudice. The trial court held Phoenix "failed to offer sufficient evidence to rebut the presumption of prejudice based upon its admitted late notice of claim." In support, the trial court noted that Rural Mutual had been deprived of the opportunity to

---

[6] Since this is a bifurcation case, Phoenix's reliance on *Grube v. Daun*, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992), a reservation of rights case, is misplaced.

We also reject Phoenix's attempt to liken this case to *Ehlers v. Colonial Penn Ins. Co.*, 81 Wis. 2d 64, 259 N.W.2d 718 (1977). There the supreme court held that the insurance company was not prejudiced although it did not receive a notice of claim from its insured until twelve and one-half months after a traffic accident resulting in her claim. *Id.* at 66–67, 71. However, as in *Fireman's Fund*, the testimony from the insurer's representative revealed that the insurer had sufficient information, based on both the insurer's and the insured's investigation, to determine how the accident happened. *Ehlers*, 81 Wis. 2d at 70–71. Here, the underlying claim does not involve a simple traffic accident but a complex claim involving multiple units of two housing developments. As noted earlier, Phoenix has not presented any evidence indicating that Rural Mutual conducted its own investigation, or that Rural Mutual was satisfied with the investigation conducted by Phoenix.

conduct depositions, serve interrogatories, independently investigate Affiliated's claims and participate in arbitration. In challenging this ruling, Phoenix points to its own investigation, the reports of its experts, Affiliated's answers to its interrogatories, and the arbitration proceeding. Because all of these sources provided information relevant to Affiliated's claims, Phoenix reasons that Rural Mutual is actually benefited, not prejudiced, by the delay.

¶ 20. However, in making this argument, Phoenix indulges in a number of unwarranted assumptions. First, Phoenix assumes that if Rural Mutual had been given the opportunity to make a timely investigation, it would have produced the same result as that produced by Phoenix's investigation. Second, Phoenix assumes that any discovery that Rural Mutual would have conducted would parallel that already conducted by Phoenix. From this, Phoenix further assumes that any defenses asserted by Rural Mutual would be the same as those currently asserted by Phoenix.[7]

¶ 21. However, there is no evidence to support these assumptions by Phoenix. As noted, Phoenix did not present any statement or concession by Rural Mutual that the delay did not impair its ability to defend or that its defense of the matter would have

---

[7] On a related theme, Phoenix argues that Rural Mutual should have sought to reopen discovery. However, given that Phoenix had the burden to rebut the presumption of prejudice, it was for Phoenix to seek this relief on Rural Mutual's behalf. Phoenix also argues that Rural Mutual still had sufficient time to conduct an investigation since the trial date had been adjourned. However, this assumes that the property was still in the same condition and that a meaningful investigation was feasible. If so, it fell to Phoenix to so demonstrate.

747

paralleled that proffered by Phoenix. Prejudice to the insurer is a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice. *Neff*, 245 Wis. 2d 285, ¶ 44. "An insurer is prejudiced by late notice when . . . it has been denied the opportunity to have input into the manner in which the underling claim is being defended." *Fireman's Fund*, 261 Wis. 2d 4, ¶ 61. Phoenix's evidence does not counter the presumption that Rural Mutual's ability to make these judgments and to take these actions has not been seriously impaired.

## CONCLUSION

¶ 22. Although Phoenix submitted evidence documenting the steps it had taken in defending Affiliated's counterclaim, this evidence does not raise a genuine issue of material fact tending to refute the presumption of prejudice to Rural Mutual. In short, Phoenix has failed to carry its burden. We uphold the trial court's grant of summary judgment in favor of Rural Mutual.[8]

*By the Court.*—Judgment affirmed.

■■■■■■■■

[8] Both parties also debate whether Affiliated's claims constitute "property damage" or an "occurrence" within the meaning of the Rural Mutual policy. Because we have concluded that Rural Mutual is not obligated to provide coverage due to Phoenix's untimely notice of claim, we do not reach these issues. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).