Robert H. SHUGARTS, II and Judith Lynn Shugarts, Plaintiffs-Appellants,†

v.

Dennis M. MOHR, Progessive Casualty Insurance Company/Artisan, Truckers Casualty Company and Wisconsin Municipal Mutual Insurance Company, Defendants,

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 2016AP983. Submitted on briefs February 15, 2017. —Decided March 14, 2017.*

2017 WI App 27

(Also reported in 894 N.W.2d 443.)

† Petition for Review Filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Harry R. Hertel* of *Hertel & Harless, S.C.*, Eau Claire.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John M. Swietlik, Jr.,* and *Audra A. Felix* of *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee.

A nonparty brief was filed by *William C. Gleisner, III,* of *Pitman, Kalkhoff, Sicula & Dentice, S.C.* and *Lynn R. Laufenberg* of *Laufenberg Law Group, S.C.,* Milwaukee

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. Robert H. Shugarts, II, was injured in an automobile accident. More than four years after the accident and over one year after commencing a lawsuit against the other driver and that driver's insurer, Shugarts wrote to his underinsured motorist (UIM) carrier, Allstate Property and Casualty Insurance Company, notifying it of an underinsured motorist claim arising from the accident. The circuit court ultimately granted Allstate summary judgment, concluding as a matter of law that Shugarts failed to provide Allstate with timely notice of his UIM claim, and that Shugarts had not rebutted the presumption that Allstate was prejudiced by the untimely notice. We agree with the circuit court's conclusions. We therefore affirm the judgment dismissing Shugarts' UIM claim against Allstate.

## BACKGROUND

¶ 2. Shugarts was employed as a deputy sheriff in Eau Claire County. On October 11, 2010, Shugarts was injured when his squad car was struck by a vehicle driven by Dennis Mohr. At the time of the accident, Mohr's vehicle was insured by Progressive Casualty Insurance Company. Shugarts' county-owned squad

car was insured under a policy issued by Wisconsin Municipal Mutual Insurance Company (WMMIC), which included UIM coverage. Shugarts and his wife, Judith Shugarts, had a personal automobile insurance policy through Allstate, which also included UIM coverage.[1]

¶ 3. In November 2011, Shugarts retained an attorney and sent a notice of retainer to Progressive. Progressive denied coverage in January 2012, asserting its policy excluded coverage for Shugarts' claim because Mohr intentionally struck Shugarts' vehicle. In April 2013, through new counsel, Shugarts wrote to Progressive and offered to settle the case for $600,000. In response, Progressive continued to assert that its policy excluded coverage for Shugarts' claim.

¶ 4. As a result, Shugarts commenced the instant lawsuit against Mohr and Progressive in June 2013. Although Progressive continued to deny coverage, in August 2013, it offered Shugarts $10,000 to settle the case. At that point, Progressive also provided a Declarations Page indicating Mohr's policy had a bodily injury liability limit of $50,000 per person.

¶ 5. In July 2014, Shugarts filed a second amended summons and third amended complaint, naming WMMIC as a defendant. Shugarts alleged WMMIC was "liable for . . . underinsured motorist coverage arising out of the operation of" Shugarts' squad car. WMMIC moved to dismiss, and later moved for summary judgment, arguing Shugarts was not an insured under its policy for purposes of UIM coverage.

¶ 6. Progressive subsequently changed its coverage position. On October 13, 2014, it offered to settle

---

[1] For the remainder of this opinion, we refer to Robert and Judith Shugarts, collectively, as "Shugarts."

Shugarts' claim for its full bodily injury liability limit of $50,000. Approximately two weeks later, on October 28, 2014, Shugarts' attorney's firm sent a notice of retainer to Allstate, advising it Shugarts had retained counsel to represent him "with regard to injuries he sustained in an automobile accident which occurred on October 11, 2010." During the ensuing months, staff from Shugarts' attorney's firm continued to correspond with Allstate regarding Shugarts' UIM claim. On February 9, 2015, counsel sent Allstate a notice, pursuant to *Vogt v. Schroeder*, 129 Wis. 2d 3, 383 N.W.2d 876 (1986), that Progressive had offered to settle Shugarts' claim for its $50,000 bodily injury liability limit.

¶ 7. In March 2015, Shugarts filed a third amended summons and fourth amended complaint, naming Allstate as a defendant and asserting it was required to provide him with UIM coverage. Allstate answered the complaint in April 2015, asserting as an affirmative defense that "[t]here is no coverage available to the plaintiffs under the Allstate policy given the failure of the plaintiffs to provide timely notice of their intention to make a claim as a result of the subject accident as required under the Allstate policy." Allstate subsequently moved for summary judgment on the same ground.

¶ 8. The circuit court granted Allstate's motion, concluding, as a matter of law, that Shugarts "failed to provide timely notice to Allstate of the accident . . . whether the notice requirement comes under the liability section of the policy, the UIM section of the policy or the statutory provisions." The court further concluded the case law cited by Shugarts "did not declare that providing notice of an accident in an underinsured motorist claim is not necessary . . . ." The court acknowledged Shugarts may have failed to

231

notify Allstate sooner because he believed there was "no need to resort to this policy." However, the court stated any failure to provide notice for that reason was "not reasonable." Finally, the court concluded Shugarts had failed to rebut the presumption that Allstate was prejudiced by the untimely notice. Shugarts now appeals.[2]

## STANDARDS OF REVIEW

¶ 9. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (2009–10).[3]

¶ 10. Our goal in interpreting an insurance policy is to give effect to the parties' intent. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe a policy as it would be understood by a reasonable person in the position of the insured. *Id.* Unambiguous

---

[2] The circuit court also granted summary judgment in favor of WMMIC. Shugarts' appeal initially challenged both the judgment dismissing his claim against WMMIC and the judgment dismissing his claim against Allstate. However, Shugarts subsequently notified this court he was voluntarily dismissing that portion of his appeal pertaining to WMMIC. We therefore address his appellate arguments only as they pertain to his claim against Allstate.

[3] Unless otherwise noted, all references to the Wisconsin Statutes are to the 2009–10 version, which was in effect during the policy period at issue in this case.

policy language is enforced as written. *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶ 10, 341 Wis. 2d 478, 815 N.W.2d 708. However, we construe ambiguous policy language against the insurer and in favor of coverage. *Id.* Policy language is ambiguous if it is reasonably susceptible to more than one interpretation. *Id.*

¶ 11. Here, the circuit court determined Allstate was entitled to summary judgment because: (1) Shugarts did not provide timely notice of his UIM claim; and (2) Shugarts failed to rebut the presumption that Allstate was prejudiced by the lack of timely notice. Whether an insured provided timely notice to its insurer is typically a question of fact, but it may be decided as a matter of law under circumstances where "no judge or jury could reasonably find that notice was timely, or conversely, untimely." *Neff v. Pierzina*, 2001 WI 95, ¶ 40, 245 Wis. 2d 285, 629 N.W.2d 177; *see also RTE Corp. v. Maryland Cas. Co.*, 74 Wis. 2d 614, 629, 247 N.W.2d 171 (1976). Similarly, whether an insurer was prejudiced by untimely notice generally presents a factual question, but it may be resolved as a matter of law where the facts are not in dispute. *Neff*, 245 Wis. 2d 285, ¶¶ 47–48.

## DISCUSSION

¶ 12. In support of its position that Shugarts failed to provide timely notice of his UIM claim, Allstate first cites a notice provision that appears in "Part I" of Shugarts' policy, which is entitled

**Automobile Liability Insurance**
**Bodily Injury—Coverage AA**
**Property Damage—Coverage BB**

233

The notice provision in Part I states:

**What To Do In Case of An Auto Accident Or Claim**

If a person insured has an **auto** accident, **we** must be notified of all details as soon as reasonably possible. If a person insured is sued as the result of an **auto** accident, **we** must be notified immediately.

¶ 13. As Shugarts observes, this notice provision appears in the section of the policy relating to liability coverage. However, the policy contains a separate section, Part VII, pertaining to UIM coverage. Parts I and VII contain separate insuring agreements, definitions, exclusions, and liability limits. In addition, Part VII contains its own notice provision. Furthermore, Part I contains an exclusion stating "[t]his coverage" does not apply to liability for "a non-owned **auto** while being used in any business or occupation of a person insured." Under these circumstances, we agree with Shugarts that a reasonable insured reading Allstate's policy could reasonably conclude the notice provision in Part I was not applicable to a UIM claim arising out of Shugarts' use of his non-owned squad car.

¶ 14. We therefore turn to the notice provision in Part VII of the policy, which provides:

**Proof of Claim; Medical Reports**

As soon as possible, **you** or any other person making claim must give **us** written proof of claim. It must include all details **we** may need to determine the amounts payable. **We** may also require any person making claim to submit to examination under oath and sign the transcript.

The insured person may be required to take medical examinations by physicians **we** choose, as often as **we**

234

reasonably require. **We** must be given authorization to obtain medical reports and copies of records.

As relevant here, this provision requires the insured, or any other person making a claim, to give Allstate "written proof of claim" "[a]s soon as possible."

¶ 15. Shugarts argues he satisfied this requirement by sending Allstate a notice of retainer on October 28, 2014, just over two weeks after Progressive offered its full policy limits in settlement of Shugarts' claim against Progressive and Mohr. Shugarts emphasizes that the notice he provided on that date complied with the principles set forth in *Vogt* and *Ranes v. American Family Mutual Insurance Co.*, 219 Wis. 2d 49, 580 N.W.2d 197 (1998).[4]

¶ 16. In *Vogt*, the plaintiff (Vogt) had been a passenger in his own vehicle during a collision with a vehicle driven by the defendant (Schroeder). *Vogt*, 129 Wis. 2d at 7. It was undisputed that Schroeder was "primarily, perhaps wholly, liable" for the accident. *Id.* It was also undisputed that Vogt's damages exceeded Schroeder's insurance policy limit of $15,000. *Id.* Schroeder's insurer offered to pay its policy limit in exchange for a release of itself and Schroeder. *Id.* at 8. Vogt wanted to accept that offer and then pursue a UIM claim under his own automobile insurance policy. *Id.* However, Vogt's insurer refused to approve the settlement "unless it [could] be accomplished without impairing [the insurer's] possible right of subrogation against . . . Schroeder." *Id.*

---

[4] Although Shugarts sent Allstate a notice of retainer on October 28, 2014, he did not send a *Vogt* notice until February 9, 2015. *See Vogt v. Schroeder*, 129 Wis. 2d 3, 383 N.W.2d 876 (1986). Thus, contrary to Shugarts' assertion, he did not actually comply with *Vogt* on October 28, 2014. This fact, however, is not material to our resolution of this appeal. *See infra* ¶¶ 20–21, 27 n.8.

235

¶ 17. On appeal, our supreme court framed the issue as "whether an underinsurer has a right of subrogation against an underinsured tortfeasor when the underinsurer makes a partial payment of its insured's damages." *Id.* at 7. The court answered that question in the affirmative, holding that an underinsurer "has the right of subrogation against the tortfeasor and his insurer to the extent that the underinsurer has paid benefits to its own insured . . . prior to the release of [the] tortfeasor . . . and his insurance company . . . ." *Id.* at 17. In other words, the underinsurer has a right of subrogation "as long as it substitutes its funds for those proferred [sic] by the tortfeasor's insurer." *Pitts v. Revocable Trust of Knueppel*, 2005 WI 95, ¶ 35, 282 Wis. 2d 550, 698 N.W.2d 761 (citing *Vogt*, 129 Wis. 2d at 17–19). "However, if the underinsurer chooses simply to consent to the settlement, it forfeits its right to subrogation." *Id.* (citing *Vogt*, 129 Wis. 2d at 20–21).

¶ 18. The *Vogt* court adopted a procedure to allow an underinsurer to "intervene in the settlement process." *Pitts*, 282 Wis. 2d 550, ¶ 38. Specifically, the court held that an underinsurer is entitled to notice of the proposed settlement, and a period of time in which to assess the case and decide whether to protect its subrogation rights by paying underinsurance benefits to its insured. *Vogt*, 129 Wis. 2d at 20–21.

¶ 19. In *Ranes*, the issue was whether an insured's failure to give the notice of settlement required by *Vogt* necessarily barred UIM coverage. *Ranes*, 219 Wis. 2d 49, ¶¶ 1–3. Our supreme court held that, under those circumstances, UIM coverage was not barred unless the underinsurer was prejudiced by the lack of notice. *Id.*, ¶ 3. However, the court concluded failure to provide a *Vogt* notice gave rise to a rebuttable presumption that the underinsurer was prejudiced. *Id.*

¶ 20. As the preceding summary shows, *Vogt* and *Ranes* pertain to the notice an insured is required to give his or her UIM carrier before entering into a settlement with an underinsured driver and that driver's insurer. *Vogt* and *Ranes* do not, however, address whether a UIM insured may be required under his or her policy to provide notice of a UIM claim before such a settlement is proposed. Neither *Vogt* nor *Ranes* stands for the proposition that providing a *Vogt* notice is all that is required of a UIM insured, in the face of a policy provision setting forth a different notice requirement.

¶ 21. Shugarts argues *Vogt* and *Ranes* demonstrate that a settlement offer, not the underlying accident, is the trigger for a UIM carrier's subrogation rights.[5] Be that as it may, the issue in this case is not when Allstate's subrogation rights were triggered or affected; the issue is whether Shugarts provided Allstate with proof of his UIM claim within the time period required by Shugarts' policy. We therefore reject Shugarts' argument that, by providing Allstate with notice of his claim after receiving a settlement offer from Progressive, Shugarts also necessarily complied with the policy's proof of claim provision.

¶ 22. Shugarts next argues it is not possible to give notice of a UIM claim until the other driver's liability insurer has offered its policy limits because,

---

[5] Shugarts also asserts that, before the underinsured driver's liability insurer has made a settlement offer, a UIM carrier "has no standing of any kind to appear in litigation because its subrogation rights have not been affected, and it is not a party in interest or a subrogated party under Wisconsin law." However, Shugarts cites no legal authority in support of this assertion, and we therefore decline to consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

until that point, the UIM carrier has no obligation to pay benefits to its insured. In support of this argument, Shugarts cites various statutory definitions of the term "claim," none of which have any relation to UIM insurance, asserting each of them "indicate[s] the existence of an obligation, debt, need, or entitlement to something being provided." *See* WIS. STAT. §§ 20.931(1)(b), 242.01(3), 427.103(1), 632.875(3)(a), 895.07(1)(c). In a related argument, amicus curiae the Wisconsin Association for Justice (WAJ) asserts a UIM claim does not accrue "until there is a settlement of the claim against the tortfeasor in the underlying action." WAJ relies on *Yocherer v. Farmers Insurance Exchange*, 2002 WI 41, ¶ 1, 252 Wis. 2d 114, 643 N.W.2d 457, which held that

> [f]or actions seeking coverage under an underinsured motorist policy, the statute of limitations begins to run from the date of loss, which is the date on which a final resolution is reached in the underlying claim against the tortfeasor, be it through denial of that claim, settlement, judgment, execution of releases, or other form of resolution, whichever is the latest.

¶ 23. These arguments are inconsistent with our supreme court's decision in *Martinson v. American Family Mutual Insurance Co.*, 63 Wis. 2d 14, 216 N.W.2d 34 (1974). There, the court was asked to determine whether an insured had provided his uninsured motorist carrier with timely proof of claim, as required by his policy. *See id.* at 19–20. Similar to the proof of claim provision in Shugarts' policy, *see supra* ¶ 14, the proof of claim provision in *Martinson* required the insured, or any other person making a claim, to "give to the company written proof of claim" "[a]s soon as practicable[.]" *Martinson*, 63 Wis. 2d at 19. The *Martinson* court concluded the insured had

failed to comply with that provision. In so doing, the court stated a proof of claim condition like the one in the insured's policy "requires the filing of the claim *as soon as practicable after the incident giving rise to the claim.* It does not mean the claim should be filed as soon as practicable after the liability of the insurer has been established." *Id.* at 21 (emphasis added). The court emphasized that the purpose of a proof of claim provision "is to afford proper information to the insurance company as to the facts regarding the loss and its liability, in order to make it possible for it to adjust and determine the extent of the loss." *Id.* at 20 (quoting 8 BLASHFIELD, AUTOMOBILE LAW AND PRACTICE, INSURANCE, § 331.1, pp. 145–46).

¶ 24. Thus, under *Martinson*, Shugarts was required to provide Allstate with proof of his UIM claim as soon as possible after the incident giving rise to the claim. *See id.* at 21. Under the circumstances of this case, we conclude it was possible for Shugarts to provide proof of claim in January 2012, when Progressive denied coverage for his claim against Mohr. At the very latest, Shugarts should have provided proof of claim in August 2013, when he learned that Progressive's policy limit was only $50,000. At that point, Shugarts was claiming he had incurred over $46,000 in medical expenses, over $645,000 in lost wages, and $17,750 in lost retirement benefits. He had offered to settle his claim against Progressive and Mohr for $600,000. Under these circumstances, when Shugarts learned in August 2013 that Progressive's policy limit was only $50,000, he necessarily knew that, regardless of what settlement offer Progressive might ultimately make, the amount paid would be insufficient to cover his losses. Shugarts therefore knew, at that point, that

he would ultimately have a UIM claim against All-state.[6] That knowledge was sufficient to trigger Shugarts' duty to provide Allstate with proof of claim, as required by the policy.[7]

¶ 25. Shugarts nevertheless argues "there exists a public policy reason why notice need not be given until the policy limits have been tendered." Shugarts contends that if an insured is required to provide proof of claim to his or her UIM carrier before the tortfeasor's insurer offers to settle for its full policy limit, personal injury attorneys will need to change their practice and provide UIM insurers with proof of claim at the same time they provide notice to tortfeasors' liability insurers. According to Shugarts, if UIM insurers are entitled to notice at the same time as tortfeasors' liability insurers, UIM carriers will have an

---

[6] At the time of Shugarts' accident, WIS. STAT. § 632.32(d) defined "underinsured motorist coverage" as coverage "for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury, death, sickness, or disease from owners or operators of underinsured motor vehicles." The term "underinsured motor vehicle" was defined, as relevant here, as a motor vehicle for which "[t]he limits under the bodily injury liability insurance policy . . . are less than the amount needed to fully compensate the insured for his or her damages." Sec. 632.32(2)(e)3. A policy endorsement attached to Shugarts' policy contained the same definition.

[7] Shugarts suggests he did not provide Allstate with proof of claim prior to October 2014 because, before that time, he believed he was entitled to UIM coverage under the WMMIC policy. However, we agree with the circuit court that any failure to provide proof of claim on those grounds was unreasonable. Shugarts' erroneous belief that he would also be entitled to UIM coverage under a different policy does not excuse him from complying with the proof of claim requirement in the Allstate policy.

240

incentive to work with tortfeasors' liability insurers to minimize their insureds' recovery of damages. This argument is unpersuasive. Shugarts points to no evidence suggesting that requiring an insured to provide notice to a UIM carrier once he or she is aware of the existence of a UIM claim will result in a sweeping change in the way UIM claims are handled. Moreover, a UIM carrier has a duty of good faith and fair dealing toward its insured, *see Danner v. Auto-Owners Ins.*, 2001 WI 90, ¶ 59, 245 Wis. 2d 49, 629 N.W.2d 159, which would prevent it from teaming up with a tortfeasor and his or her liability insurer to the insured's detriment.

■

¶ 26. For the foregoing reasons, we agree with the circuit court that Shugarts failed to provide timely proof of claim, as required by the Allstate policy. That conclusion, however, does not end our inquiry. Rather, under WIS. STAT. § 631.81(1),

> Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

"The decisions interpreting WIS. STAT. § 631.81(1) hold that when the insured fails to give notice within one year after the time required by the policy, 'there is a rebuttable presumption of prejudice and the burden of proof shifts to the claimant to prove that the insurer was not prejudiced by the untimely notice.' " *Neff*, 245 Wis. 2d 285, ¶ 43 (quoting *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 146–47, 277 N.W.2d 863 (1979)).

241

¶ 27. We have concluded the proof of claim provision in Shugarts' policy required him to provide Allstate with proof of claim, at the latest, by August 2013. Shugarts concedes he did not provide Allstate with any notice of his UIM claim until October 28, 2014, when his attorney's office sent Allstate a notice of retainer.[8] Because that notice was sent more than one

---

[8] Notably, the Allstate policy required Shugarts to provide "written proof of claim." In *Martinson v. American Family Mutual Insurance Co.*, 63 Wis. 2d 14, 20–21, 216 N.W.2d 34 (1974), our supreme court explained that "[t]he notice of accident, occurrence or loss provision of the general policy provisions is distinct and different from the proof of claims requirements of the uninsured motorist endorsement . . . ." The court elaborated:

> As used in a policy of automobile insurance, notice of loss and proofs of loss are distinct concepts, and they have different purposes and functions. The provisions for notice of loss refer to information to the insurance company of the loss of, or damage to, the insured automobile, while the clause pertaining to proofs of loss usually requires a statement of loss, signed and sworn to by the insured, containing specified information.

*Id.* (quoting 8 BLASHFIELD, AUTOMOBILE LAW AND PRACTICE, INSURANCE, § 331.1, pp. 145–46). We question whether Shugarts' October 28, 2014 notice of retainer qualified as a "proof of claim," under this definition. However, because the parties do not raise the issue, and because its resolution ultimately does not affect the disposition of this appeal, we assume, without deciding, that the October 28, 2014 notice of retainer sufficed as a valid proof of claim.

We also observe that, while Allstate concedes Shugarts "first sent notice of loss to Allstate in a letter dated October 28, 2014," Allstate also contends it "first received notice of the loss in January 2015." However, as Shugarts notes, the mailing of a letter creates a rebuttable presumption that the letter was delivered and received, which "shifts to the challenging party the burden of presenting credible evidence of non-receipt." *State ex rel. Flores v. State*, 183 Wis. 2d 587, 612–13, 516 N.W.2d 362 (1994). Allstate does not point to any evidence that it did not

year after the time required by the policy, there is a rebuttable presumption Allstate was prejudiced by the untimely notice, and Shugarts has the burden to prove Allstate was not prejudiced. *See id.*

¶ 28. "Prejudice to the insurer in this context is a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice." *Id.*, ¶ 44. Timely notice is important to an insurer so that it can investigate the circumstances of an accident, contact witnesses while they are still available and while their memories are still fresh, and locate unknown witnesses. *Id.*, ¶ 59. In addition, over time, witnesses may "become entrenched in a position because they have calculated the legal effect of their answers." *Id.* Even where the insured has conducted an investigation close in time to the underlying accident, an insurer may still be prejudiced by the loss of the opportunity to perform its own investigation. *See id.*, ¶¶ 62–67; *see also Kreckel v. Walbridge Aldinger Co.*, 2006 WI App 168, ¶¶ 17–18, 295 Wis. 2d 649, 712 N.W.2d 508; *Phoenix Contractors, Inc. v. Affiliated Capital Corp.*, 2004 WI App 103, ¶¶ 19–21, 273 Wis. 2d 736, 681 N.W.2d 310.

¶ 29. Shugarts argues he has rebutted the presumption of prejudice because: (1) Shugarts and his

___

receive the October 28, 2014 correspondence. Regardless, the parties' apparent dispute about whether (or when) Allstate received that correspondence is not a genuine issue of material fact barring summary judgment because, even accepting Shugarts' position that the letter was mailed and received in October 2014, we nevertheless conclude it was untimely.

243

wife are alive and can be deposed; (2) "[u]pon informa- tion and belief," Mohr is alive and can be deposed; (3) to date, no depositions of any medical providers, law enforcement officers, or other witnesses have been taken, and, "[u]pon information and belief," those individuals remain alive and available to be deposed; (4) all of the medical facilities that provided treatment to Shugarts remain in existence; (5) Shugarts has provided Allstate with medical records, and if other records are needed, Allstate can request them; and (6) Allstate can conduct an independent medical ex- amination (IME) of Shugarts, if it wishes to do so.

¶ 30. However, it is undisputed that Allstate had no opportunity to conduct any investigation until more than four years after the underlying accident, and more than one year after Shugarts commenced the instant lawsuit. Regardless of whether some witnesses are currently available for deposition and medical records are available for inspection, Allstate was de- prived of the opportunity to conduct an investigation and interview witnesses while their memories of the underlying events were still comparatively fresh and before they became entrenched in their positions. Moreover, Shugarts' assertion "upon information and belief" that certain witnesses are available to be de- posed is not supported by citations to the record and appears to be purely speculative. In addition, Shugarts fails to account for the fact that Allstate was deprived of the opportunity to conduct a meaningful investiga- tion into Shugarts' medical issues and participate in settlement negotiations to resolve this matter at an earlier stage. On these facts, we conclude, as a matter of law, that Shugarts has failed to meet his burden to rebut the presumption that Allstate was prejudiced by his failure to timely provide proof of his UIM claim.

¶ 31. The three cases Shugarts cites in support of his argument that Allstate was not prejudiced are distinguishable. In *Fireman's Fund Insurance Co. v. Bradley Corp.*, 2003 WI 33, ¶¶ 61–63, 261 Wis. 2d 4, 660 N.W.2d 666, our supreme court concluded as a matter of law that an insurer suffered no prejudice due to its insured's failure to provide timely notice of a lawsuit based on testimony from the insurer's litigation manager that, even if the insurer had received notice at an earlier time, it would not have handled matters differently and would not have conducted any further investigation. Here, in contrast, Shugarts has presented no evidence establishing that Allstate would not have handled matters differently or conducted its own investigation had it been provided with timely proof of Shugarts' UIM claim.

¶ 32. In *Rentmeester v. Wisconsin Lawyers Mutual Insurance Co.*, 164 Wis. 2d 1, 3–4, 9, 473 N.W.2d 160 (Ct. App. 1991), we upheld the circuit court's conclusion that no prejudice existed when an attorney failed to provide notice of claim to his malpractice insurer within one year after the time required by the policy. We relied, in part, on the fact that two trial attorneys had testified the insurer "was not prejudiced in preparing a legal malpractice defense, and all rights of discovery, the availability of evidence and preparation for trial were unaffected by the delay in notice." *Id.* at 9. Shugarts has not cited similar evidence in this case supporting his claim that Allstate was not prejudiced.

¶ 33. In *International Flavors & Fragrances, Inc. v. Valley Forge Insurance Co.*, 2007 WI App 187, ¶ 13, 304 Wis. 2d 732, 738 N.W.2d 159, we concluded an insured had rebutted the presumption that its insurer was prejudiced by the insured's failure to provide

timely notice of a lawsuit because the record showed the insurer "had the opportunity to enter the litigation, investigate, conduct discovery, and participate in decision making." *Id.*, ¶ 13. We specifically rejected the insurer's argument that it was prejudiced because the late notice prevented it from participating in strategic decisions regarding the discovery that was conducted before it entered the case. *Id.*, ¶ 20. However, the insurer in *International Flavors* apparently did not argue it had been prejudiced by the delay in notice due to any degradation in witnesses' recollections or their entrenchment in certain positions. Here, Allstate specifically argues it was prejudiced based on those factors.

¶ 34. Finally, Shugarts argues in his reply brief that, even assuming he should have provided Allstate with proof of his UIM claim in August 2013, at that point nearly three years had elapsed since the accident date. Accordingly, he asserts any investigation undertaken in August 2013 would not have been close in time to the accident in any event. However, in making this argument Shugarts ignores the presumption that Allstate was prejudiced by his late notice and his burden to rebut that presumption. An investigation conducted in August 2013 would have been closer in time to the accident than an investigation conducted after Shugarts finally notified Allstate of his UIM claim more than one year later in October 2014. Shugarts provides no evidence to support a conclusion that the same witnesses who were available in August 2013 remained available in October 2014, or that they would have provided the same testimony in October 2014 as in August 2013. Shugarts simply has not cited any evidence that would support a conclusion Allstate was not prejudiced by his failure to provide timely

proof of his UIM claim. As such, Shugarts has failed, as a matter of law, to rebut the presumption that Allstate was prejudiced. Accordingly, we affirm the summary judgment dismissing Shugarts' UIM claim against Allstate.

*By the Court.*—Judgment affirmed.