# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2016AP983 |
| COMPLETE TITLE: | Robert H. Shugarts, II and Judith Lynn Shugarts, Plaintiffs-Appellants-Petitioners, v. Dennis M. Mohr, Progressive Casualty Insurance Company/Artisan and Truckers Casualty Company and Wisconsin Municipal Mutual Insurance Company, Defendants, Allstate Property and Casualty Insurance Company, Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 375 Wis. 2d 225, 894 N.W.2d 443
PDC No:  2017 WI App 27 - Published

| | |
|---|---|
| OPINION FILED: | April 5, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 9, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | Michael A. Schumacher |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed and an oral argument by *Harry R. Hertel* and *Hertel Law Offices*, *S.C.*, Eau Claire.

For the defendant-respondent, there was a brief filed by *Leah M. Cameron*, *John M. Swietlik*, *Jr.*, and *Kasdorf, Lewis & Swietlik*, *S.C.*, Milwaukee.  There was an oral argument by *John M. Swietlik*, *Jr.*

An amicus curiae brief was filed on behalf of Wisconsin Association for Justice by *Edward E. Robinson* and *Cannon & Dunphy*, *S.C.*, Brookfield, with whom on the brief were *William C. Gleisner*, *III* and *Law Offices of William C. Gleisner*, *III*, Brookfield, and *Lynn R. Laufenberg*, *Mark L. Thomsen*, and *Gingras*, *Cates*, *Luebke*, *S.C.*, Waukesha. There was an oral argument by *Edward E. Robinson.*

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2016AP983
(L.C. No. 2013CV377)

STATE OF WISCONSIN          :        IN SUPREME COURT

Robert H. Shugarts, II and Judith Lynn
Shugarts,

      Plaintiffs-Appellants-Petitioners,

  v.

Dennis M. Mohr, Progressive Casualty Insurance
Company/Artisan and Truckers Casualty Company
and Wisconsin Municipal Mutual Insurance
Company,

      Defendants,

Allstate Property and Casualty Insurance
Company,

      Defendant-Respondent.

**FILED**

**APR 5, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANN WALSH BRADLEY, J. The petitioners, Robert and Judith Shugarts, seek review of a published court of appeals decision affirming the circuit court's grant of summary judgment

to the Shugarts' underinsured motorist (UIM) carrier.[1] They contend that the court of appeals erred in concluding that they failed to provide Allstate Property and Casualty Company (Allstate) with timely notice of their UIM claim and that they failed to rebut the presumption that Allstate was prejudiced by the untimely notice.

¶2 Specifically, the Shugarts assert that the court of appeals mistakenly interpreted the UIM policy's "proof of claim" provision as a "notice of accident" provision. The Shugarts submit that instead it is the tender of the tortfeasor's underlying policy limits, not the accident itself, that triggers the notice provision in the UIM policy. They further argue that if the proof of claim was not timely filed, then Allstate was not prejudiced by the untimely notice.

¶3 We conclude that the operative event triggering the notice requirement in the Shugarts' UIM policy is the tender of the tortfeasor's underlying policy limit. We further conclude that Wis. Stat. § 631.81(1) (2009-10)[2] does not apply to the UIM policy provision at issue. Consequently, we determine that the Shugarts provided Allstate with timely proof of their UIM claim as required by the policy language. Because we determine that

_____

[1] Shugarts v. Mohr, 2017 WI App 27, 375 Wis. 2d 225, 894 N.W.2d 443 (affirming order of circuit court for Eau Claire County, Michael A. Schumacher, Judge).

[2] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

the Shugarts' proof of claim was timely filed, we need not address whether Allstate was prejudiced.

¶4 Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings.

I

¶5 Robert Shugarts was employed as a deputy sheriff in Eau Claire County. While on duty on October 11, 2010, he was involved in the pursuit of Dennis Mohr (Mohr), a suspect in a hit-and-run accident. Robert was severely injured when Mohr's vehicle struck his squad car.

¶6 Mohr's vehicle was insured by Progressive Casualty Insurance Company (Progressive). The squad car was owned by Eau Claire County and was insured under a policy issued by Wisconsin Municipal Mutual Insurance Company (WMMIC), which included UIM coverage. The Shugarts possessed a personal automobile insurance policy through Allstate, which also included UIM coverage.

¶7 In November of 2011, the Shugarts hired an attorney who sent notice of retainer to Progressive. It denied coverage in January of 2012, basing the denial on the assertion that Mohr's striking of the squad car was an intentional act and thus not covered under its policy.

¶8 The Shugarts proposed a $600,000 settlement with Progressive in April of 2013. In May of 2013, Progressive turned down the offer, persisting in its assertion that the intentional act exclusion in Mohr's policy served as a defense to coverage.

¶9  After Progressive rejected their offer, the Shugarts filed this lawsuit in June of 2013.  Progressive continued to deny coverage, but offered to settle the case for $10,000.  It also provided the Shugarts with a declarations page from Mohr's policy indicating that it contained a bodily injury liability limit of $50,000 per person.

¶10  In July of 2014, the Shugarts filed an amended complaint, adding Eau Claire County's insurer, WMMIC, as a defendant.  The Shugarts alleged that WMMIC was liable for UIM coverage "arising out of the operation of" his squad car.[3]

¶11  Subsequently, on October 13, 2014, Progressive changed its position on coverage.  It offered to pay the Shugarts the policy limit of $50,000 if WMMIC waived any subrogation claim. On October 28, 2014, the Shugarts sent a notice of retainer to Allstate, advising that counsel had been retained "with regard to injuries he sustained in an automobile accident which occurred on October 11, 2010."

¶12  After additional correspondence between the Shugarts' attorneys and Allstate, on February 9, 2015, the Shugarts sent

---

[3] WMMIC moved to dismiss, and later for summary judgment. The circuit court granted summary judgment to WMMIC.  The Shugarts' notice of appeal initially purported to challenge the circuit court's grants of summary judgment to both Allstate and WMMIC.  However, before the court of appeals the Shugarts voluntarily dismissed that portion of the appeal pertaining to WMMIC.  Shugarts v. Mohr, 2017 WI App 27, ¶8 n.2, 375 Wis. 2d 225, 894 N.W.2d 443.  Accordingly, the Shugarts do not raise any argument related to the summary judgment in favor of WMMIC before this court.

Allstate a notice pursuant to <u>Vogt v. Schroeder</u>, 129 Wis. 2d 3, 383 N.W.2d 876 (1986).[4] The notice stated that Progressive had offered to settle the Shugarts' claim for the policy limit of $50,000. Further, the notice explained that "[i]n evaluating Mr. Shugarts' injuries, we believe that Mr. Shugarts' claim is well in excess of the policy limits afforded by Progressive Insurance."

---

[4] In <u>Vogt</u>, we concluded that a UIM insurer "has the right of subrogation against the tortfeasor and his insurer to the extent that the underinsurer has paid benefits to its own insured . . . prior to the release of the tortfeasor . . . and his insurance company[.]" <u>Vogt v. Schroeder</u>, 129 Wis. 2d 3, 17, 383 N.W.2d 876 (1986). Stated differently, the UIM insurer has a right of subrogation "as long as it substitutes its funds for those proffered by the tortfeasor's insurer." <u>Pitts v. Revocable Trust of Knueppel</u>, 2005 WI 95, ¶35, 282 Wis. 2d 550, 698 N.W.2d 761 (citing <u>Vogt</u>, 129 Wis. 2d at 17-19). If the UIM insurer simply consents to the settlement, it forfeits its subrogation right. <u>Pitts</u>, 282 Wis. 2d 550, ¶35 (citing <u>Vogt</u>, 129 Wis. 2d at 20-21).

Further, in <u>Vogt</u> we adopted a procedure to allow a UIM insurer to intervene in the settlement process. <u>Pitts</u>, 282 Wis. 2d 550, ¶38. Namely, a UIM insurer is entitled to notice of a tentative settlement agreement and a period of time in which to assess the case. This allows the UIM insurer to decide whether to substitute its payment to the insured in an amount equal to the tentative settlement, thereby preserving its subrogation rights, or acquiescing in the settlement. <u>Vogt</u>, 129 Wis. 2d at 20-21. "In effect, this procedure gives to the plaintiff's underinsurer the option of rejecting the settlement offer to prevent the release of the tortfeasor and thus protect its right of subrogation, but it may not thwart the right of its own insured to receive some payment, either the amount of the insured's underinsurance claim or the amount offered in settlement." <u>Id.</u> at 21.

¶13 The Shugarts filed an additional amended complaint in March of 2015, adding Allstate as a defendant. Allstate answered the complaint raising untimeliness as an affirmative defense. It stated that "[t]here is no coverage available to the plaintiffs under the Allstate policy given the failure of the plaintiffs to provide timely notice of their intention to make a claim as a result of the subject accident as required under the Allstate policy."

¶14 Allstate moved for summary judgment. It argued that the Shugarts "did not provide timely notice to Allstate of the October 11, 2010 motor vehicle accident as required by the Allstate policy."

¶15 The circuit court granted Allstate's motion for summary judgment. Specifically, it stated that it considered the notice untimely regardless of the governing policy provision or statute:

> So I am going to find, as a matter of law, that the plaintiff failed to provide timely notice to Allstate of the accident and I think that's true whether the notice requirement comes under the liability section of the policy, the UIM section of the policy or the statutory provisions. All of them use similar language . . . I have to conclude that it was reasonably possible for Mr. Shugarts to provide notice to Allstate sometime shortly after the accident.

Further, the circuit court concluded that the Shugarts had failed to rebut the presumption that Allstate was prejudiced by the untimely notice.

¶16 The Shugarts appealed, and the court of appeals affirmed the circuit court's grant of summary judgment. The

6

court of appeals concluded that "Shugarts was required to provide Allstate with proof of his UIM claim as soon as possible after the incident giving rise to the claim." Shugarts v. Mohr, 2017 WI App 27, ¶24, 375 Wis. 2d 225, 894 N.W.2d 443. "[I]t was possible for Shugarts to provide proof of claim in January 2012, when Progressive denied coverage for his claim against Mohr. At the very least, Shugarts should have provided proof of claim in August 2013, when he learned that Progressive's policy limit was only $50,000." Id. The court of appeals further agreed with the circuit court that the Shugarts had failed to rebut the presumption that Allstate was prejudiced by the late notice. Id., ¶34.

II

¶17 In this case we address a summary judgment dismissing the Shugarts' claim against Allstate. We review a grant of summary judgment independently, applying the same methodology as the circuit court. Novell v. Migliaccio, 2008 WI 44, ¶23, 309 Wis. 2d 132, 749 Wis. 2d 544. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

¶18 We interpret first the parties' written insurance contract. Interpretation of an insurance contract presents a question of law. Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. Our review also requires us to interpret a statute. Statutory interpretation likewise presents a question of law. Moustakis v. State of Wis. Dep't of Justice, 2016 WI 42, ¶16, 368 Wis. 2d 677, 880

N.W.2d 142 (citation omitted). We review questions of law independently of the decisions rendered by the circuit court and court of appeals. Id.

### III

¶19 Allstate identifies two potential sources of a requirement that the Shugarts provide it with notification of a UIM claim as soon as possible following an accident: the language of the insurance policy and Wis. Stat. § 631.81(1). We begin by examining the notice requirements dictated by the language of the Shugarts' insurance policy. Subsequently, we address the proof of loss mandated by § 631.81(1) and its potential applicability.

### A

¶20 We turn first to the language of the Shugarts' insurance policy. When the language of an insurance policy is unambiguous, a court will not rewrite the policy by interpretation or impose obligations the parties did not undertake. Acuity v. Chartis Specialty Ins. Co., 2015 WI 28, ¶24, 361 Wis. 2d 396, 861 N.W.2d 533. A policy's terms are interpreted as they would be understood from the perspective of a reasonable person in the position of the insured. Frost ex rel. Anderson v. Whitbeck, 2002 WI 129, ¶20, 257 Wis. 2d 80, 654 N.W.2d 225.

¶21 Allstate cites two provisions in the Shugarts' insurance policy, arguing they require the Shugarts to submit

8

notice of loss as soon as possible[5] after the accident. First, Allstate points to a provision in the liability portion of the policy, entitled "What To Do In Case Of An Auto Accident Or Claim" (the "notice of accident" provision):

> If a person insured has an auto accident, we must be notified of all details as soon as reasonably possible. If a person insured is sued as the result of an auto accident, we must be notified immediately.

¶22 Although this provision is located in the liability portion of the policy, Allstate contends that it applies with equal force to UIM claims. Allstate concedes that the UIM portion of the policy does not specifically state that an insured must provide notice of an accident. Nevertheless, it argues that nothing in the notice provision contained in the liability portion of the policy indicates that the notice provision does not apply in the UIM context.

¶23 We disagree. The Shugarts' insurance policy is separated into seven "parts." At issue here are Part I, entitled "Automobile Liability Insurance," and Part VII, entitled "Underinsured Motorists Insurance." A reasonable insured reading the policy would likely conclude that the provisions located in the liability section apply in the

---

[5] We observe that the notice of accident provision uses the phrase "as soon as reasonably possible" to describe the timing of the notice it requires, while the notice of claim provision uses the phrase "as soon as possible." This variance does not affect our analysis.

liability section only.[6]  See Martinson v. Am. Family Mut. Ins. Co., 63 Wis. 2d 14, 20, 216 N.W.2d 34 (1974) ("The notice of accident, occurrence or loss provision of the general policy provisions is distinct and different from the proof of claims requirements of the uninsured motorist endorsement and the distinction is well established.").[7]  We therefore conclude that the "notice of accident" provision in the liability section of the Shugarts' policy does not apply to UIM claims.

¶24  Allstate next directs our attention to the UIM portion of the policy, which contains a provision entitled "Proof of Claim; Medical Reports" (the "proof of claim" provision).  This provision sets forth that a person making a UIM claim must give Allstate written proof of claim "as soon as possible":

> As soon as possible, you or any other person making claim must give us written proof of claim.  It must include all details we may need to determine the amounts payable.  We may also require any person making claim to submit to examination under oath and sign the transcript.

---

[6] Even if this were not the case, at the very least the "notice of accident" provision in the liability section of the policy is ambiguous as to its application to UIM claims. Accordingly, the provision must be construed against the insurer who drafted it.  See Acuity v. Chartis Specialty Ins. Co., 2015 WI 28, ¶24, 361 Wis. 2d 396, 861 N.W.2d 533.

[7] This difference still holds even though we distinguish this case from Martinson v. Am. Family Mut. Ins. Co., 63 Wis. 2d 14, 216 N.W.2d 34 (1974).  See infra, ¶¶31-32.  Although Martinson is an uninsured motorist (UM) case and this is a UIM case, the difference between proof of loss and proof of claim is as true for UIM claims as it is for the UM claim at issue in Martinson.

The insured person may be required to take medical examinations by physicians we choose, as often as we reasonably require. We must be given authorization to obtain medical reports and copies of records.

¶25 At the outset, two characteristics of this provision are notable. First, the proof of claim provision is located in the UIM section of the policy. As discussed above, a reasonable insured would ascribe importance to this location in the policy, making it the operative notice provision for UIM claims. See supra, ¶23. Second, the provision requires a claimant to submit proof of "claim," not proof of "accident" or proof of "loss." Neither the word "accident" nor the word "loss" appears in the provision.

¶26 Pursuant to the proof of claim provision, a person making a UIM claim is required to submit "proof of claim" "as soon as possible." The question we must answer is when the Shugarts had a UIM claim of which they could give notice. In other words, we must determine what is the operative event triggering the proof of claim provision.

¶27 To answer this question, we look elsewhere in the UIM section of the policy. Namely, the policy contains an exhaustion provision, that states:

We are not obligated to make any payment for bodily injury under this coverage which arises out of the use of an underinsured motor vehicle until after the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

¶28 An exhaustion clause "requires the insured to exhaust the tortfeasor's liability limits by payment of full policy

11

limits in order to trigger the duty to pay UIM benefits." Danbeck v. Am. Family Mut. Ins. Co., 2001 WI 91, ¶25, 245 Wis. 2d 186, 629 N.W.2d 150. Pursuant to an exhaustion clause, "UIM benefits are owed only when the tortfeasor's liability insurance is insufficient to cover the UIM policyholder's damages." Id., ¶22. "Such language [in a policy] provides a clear indication of when the policy comes into play and when a presentable claim exists for the insured." Yocherer v. Farmers Ins. Exch., 2002 WI 41, ¶20 n.3, 252 Wis. 2d 114, 643 N.W.2d 457.

¶29 In other words, tortfeasor drivers are not by definition "underinsured" until their policy limits are exhausted. Danbeck, 245 Wis. 2d 186, ¶22; see also Arnold P. Anderson, Wisconsin Insurance Law § 4.93 (7th ed. 2015) ("UIM policies require that the insured recover or exhaust all money available from the tortfeasor's liability policy before the insured looks to the UIM policy for payment."). Giving effect to the exhaustion clause, we therefore conclude that the operative event triggering the notice requirement in the Shugarts' UIM policy is the tender of the tortfeasor's underlying policy limit.

¶30 The language and application of the exhaustion clause highlight the excess nature of UIM coverage. UIM coverage is first party coverage that may afford additional compensation for injured persons whenever a tortfeasor is inadequately insured. See Danner v. Auto-Owners Ins., 2001 WI 90, ¶51, 245 Wis. 2d 49, 629 N.W.2d 159 (quoting 3 Alan I. Widiss, Uninsured and

12

Underinsured Motorist Insurance § 31.4, at 5 (Revised 2d ed. 2001)). As explained above, UIM coverage is not triggered until the tortfeasor's underlying liability limits are met. This characteristic differentiates UIM coverage from uninsured motorist (UM) coverage, which is first party coverage that is also "first dollar" coverage because the tortfeasor has no insurance.

¶31 Accordingly, the court of appeals' reliance on Martinson, 63 Wis. 2d 14, a case involving UM insurance, not UIM insurance, is misplaced. In Martinson, the court addressed whether an insured had provided timely proof of a UM claim as required by the applicable policy provision. See id. at 19-20. The Martinson court concluded that "[t]he proof of claim condition require[d] the filing of the claim as soon as practicable after the incident giving rise to the claim." Id. at 21. It further determined that the proof of claim condition "does not mean the claim should be filed as soon as practicable after the liability of the insurer has been established." Id.

¶32 Martinson's holding makes sense in the context of a "first dollar" UM claim. However, UIM coverage is excess coverage. It is not triggered by the incident itself, but by the tender of the tortfeasor's underlying policy limit. Martinson, therefore, is distinguishable because it addresses UM, but not UIM coverage.

¶33 Here, application of the exhaustion clause indicates that the Shugarts' UIM coverage was not triggered until the $50,000 policy limit of Mohr's Progressive policy was exhausted.

13

This did not occur until October 13, 2014, when Progressive offered its policy limit to settle the case. Before that date, the Shugarts had no UIM "claim" of which they could give notice.

¶34 Indeed, prior to the offer of the policy limit on October 13, 2014, Progressive offered the Shugarts a $10,000 settlement. Had the Shugarts accepted this initial offer, after providing notice of the tentative settlement to Allstate, there would have been no UIM coverage. The amount received by the Shugarts would have been $40,000 less than Progressive's policy limit. As such, Mohr by definition would not have been an "underinsured" motorist.

¶35 After receiving Progressive's offer to settle for the full policy limit, the Shugarts did not unduly delay notifying Allstate of the offer. On October 28, 2014, fifteen days after receiving the offer from Progressive, the Shugarts sent Allstate a notice of retainer. Correspondence between the Shugarts and Allstate ensued, and the Shugarts ultimately sent a Vogt notice on February 9, 2015, advising Allstate of its ability to substitute payment and thereby protect its subrogation rights. See supra, ¶12 n.4. This timeline is sufficient to satisfy the policy's requirement that notice of claim be provided "as soon as possible."

¶36 Allstate contends that the Shugarts should have provided notice shortly after the accident, or at the very latest in August of 2013 after receiving the declarations page of the Progressive policy showing the policy limit of $50,000. But the policy requires notice of "claim," not notice of

14

"possible claim." Accepting Allstate's argument would lead to the absurd result that an accident victim would be required to file a notice of a UIM claim after every auto accident to prevent forfeiting such a claim if the tortfeasor's underlying liability limits do not cover the full loss.

¶37 We thus conclude that, pursuant to the policy language, the operative event triggering the notice requirement in the Shugarts' UIM policy is the tender of the tortfeasor's underlying policy limit. Because the Shugarts sent Allstate a notice of retainer fifteen days after the Progressive's offer to settle for the policy limit and sent the Vogt notice within four months of that operative event, their notice to Allstate was timely.

B

¶38 Allstate contends next that Wis. Stat. § 631.81(1) applies here. Section § 631.81(1) addresses proof of loss:

> Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

¶39 Allstate asserts that the Shugarts did not provide proof of loss as soon as reasonably possible, and not within one year after the accident. According to Allstate, the notice is untimely pursuant to Wis. Stat. § 631.81(1). We disagree. As analyzed above, the policy does not require "proof of loss" for UIM claims.

15

¶40 By indicating that "notice or proof of loss" is required "within one year after the time it was required by the policy," Wis. Stat. § 631.81(1) presupposes that the policy requires "notice or proof of loss" in the first instance. In other words, the text of § 631.81(1) directs the reader back to the policy. As analyzed above, we conclude that the UIM section of the policy requires proof of "claim," not proof of "loss." See supra, ¶25.

¶41 For this reason, we determine that Wis. Stat. § 631.81(1) does not apply to the UIM policy at issue. Allstate contends that § 631.01(1) requires a contrary result.[8] It argues that § 631.01(1) does not limit the application of § 631.81 to liability insurance, and therefore it should apply to UIM

---

[8] Wisconsin Stat. § 631.01(1) states:

(1) General. This chapter and ch. 632 apply to all insurance policies and group certificates delivered or issued for delivery in this state, on property ordinarily located in this state, on persons residing in this state when the policy or group certificate is issued, or on business operations in this state, except:

(a) As provided in ss. 600.01 and 618.42;

(b) On business operations in this state if the contract is negotiated outside this state and if the operations in this state are incidental or subordinate to operations outside this state, unless the contract is for a policy of insurance to cover a warranty, as defined in s. 100.205(1)(g), in which case the provisions set forth in sub. (4m) apply; and

(c) As otherwise provided in the statutes.

16

insurance as well. We are not persuaded. The text of § 631.81(1) clearly indicates that it applies to only those policy provisions that by their own terms require proof or notice of loss. See § 631.81(1) ("Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy . . . ") (emphasis added).

¶42 Because we determine that, pursuant to the language of the policy, the Shugarts provided timely notice of their UIM claim to Allstate, we need not address whether Allstate was prejudiced by an untimely notice. See Ranes v. Am. Family Mut. Ins. Co., 219 Wis. 2d 49, ¶3, 580 N.W.2d 197 (1998) (holding that an insured's failure to give notice of settlement does not bar UIM coverage unless the insurer was prejudiced by the lack of notice); see also Wis. Stat. § 631.81(1).

¶43 In sum, we conclude that the operative event triggering the notice requirement in the Shugarts' UIM policy is the tender of the tortfeasor's underlying policy limit. We further conclude that Wis. Stat. § 631.81(1) does not apply to the UIM policy provision at issue. Consequently, we determine that the Shugarts provided Allstate with timely proof of their UIM claim as the policy language dictates.

¶44 Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court.

17