**2019 WI 61**

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2016AP2334 |
| COMPLETE TITLE: | Leicht Transfer & Storage Company, |
| |         Plaintiff-Appellant-Petitioner, |
| |    v. |
| | Pallet Central Enterprises, Inc., |
| |         Defendant, |
| | Travelers Property Casualty Company, Acuity, A |
| | Mutual Insurance Company and Hiscox Insurance |
| | Company Inc., |
| |         Defendants-Respondents. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 270,915 N.W.2d 729
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | May 31, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 1, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Brown |
|   JUDGE: | Marc A. Hammer |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | A.W. WALSH, J. dissents (opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *George Burnett* and *Conway, Olejniczak & Jerry, S.C.*, Green Bay. There was an oral argument by *George Burnett*.

For the defendant-respondent Hiscox Insurance Company, Inc., there was a brief filed by *Kris Bartos,* and *Jeffrey Leavell, S.C.*, Racine. There was an oral argument by *Jeffrey Leavell*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2016AP2334

(L.C. No.   2015CV878)

STATE OF WISCONSIN                    :          IN SUPREME COURT

**Leicht Transfer & Storage Company,**

         **Plaintiff-Appellant-Petitioner,**

    **v.**

**Pallet Central Enterprises, Inc.,**

         **Defendant,**

**Travelers Property Casualty Company, Acuity, A Mutual**

**Insurance Company and Hiscox Insurance Company Inc.,**

         **Defendants-Respondents.**

**FILED**

May 31, 2019

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   DANIEL KELLY, J.   Pallet Central Enterprises, Inc., ("Pallet Central") forged certain delivery tickets and used them to bill Leicht Transfer & Storage Company ("Leicht") for the sale and delivery of pallets that Pallet Central never sold or

delivered. This case followed, and in the piece of it we address today, Leicht sought coverage for its losses under the Commercial Crime Insurance Policy issued to it by Hiscox Insurance Company, Inc. ("Hiscox"). Specifically, Leicht asserts that the forged delivery tickets comprise "directions to pay" within the meaning of the "Forgery or Alteration" insuring agreement of the Hiscox policy. We disagree, and so we affirm the court of appeals.[1]

## I. BACKGROUND

¶2 Leicht provides warehousing services in the Green Bay area. It uses pallets to assist in the storage and shipment of warehoused items. Between January 2013 and February 2015, Leicht purchased pallets from Pallet Central. The companies followed a standard practice for documenting these transactions for the purpose of inventory control and billing. Part of that standard practice involved Pallet Central's preparation of a delivery ticket describing the shipment, including the type of pallets, the number to be delivered, the delivery date, and the identification number of the trailer conveying them. The delivery ticket would accompany the truck driver making the shipment. Upon delivery, a Leicht employee would verify the shipment and sign the delivery ticket. The truck driver would

---

[1] This is a review of an unpublished per curiam opinion of the court of appeals, Leicht Transfer & Storage Co. v. Pallet Cent. Enter., No. 2016AP2334, unpublished slip op. (Wis. Ct. App. Apr. 25, 2018) (per curiam), which affirmed the Brown County Circuit Court, the Honorable Marc A. Hammer, presiding.

then return a copy of the delivery ticket to Pallet Central, after which Pallet Central would prepare an invoice package. The package comprised an invoice, a copy of the signed delivery ticket, and a voucher.[2] Pallet Central would then submit the invoice package to Leicht for payment. Leicht would pay the invoice only if the package contained a copy of the signed delivery ticket. Leicht would then bill its customers for, inter alia, the pallets it used in storing and shipping their goods.

¶3 Eventually, Leicht became aware that the number of invoice packages Pallet Central was submitting had dramatically increased. Leicht's internal investigation revealed that many of the delivery tickets bore the apparent signatures of Leicht employees who could not possibly have executed the documents. Ultimately, Leicht concluded that the signatures were forged, and that it had consequently paid Pallet Central for pallets it never received.[3] Leicht says Pallet Central submitted fraudulent

---

[2] Leicht did not describe the voucher, and the sole invoice package in the Record contains only an invoice and delivery ticket. Therefore, our analysis does not rely on the nature or content of the voucher. We have included the invoice package as an appendix to our opinion. We assume this invoice package is representative of all invoice packages submitted by Pallet Central to Leicht (aside from the question of forgery and the absence of the voucher).

[3] Leicht reported its findings to the DePere Police Department. The investigating officer concluded that Leicht had been the victim of theft by use of fraudulent invoices. Whether the delivery tickets at issue actually were forged is not before us, and we express no opinion on that question.

4

invoice packages worth approximately $751,000.00, of which it paid approximately $505,000.00.

¶4 Leicht submitted its loss to Hiscox pursuant to the terms of its Commercial Crime Insurance Policy (the "Policy"). The relevant language, found in the "Forgery or Alteration" insuring agreement, states the following:

(1) Checks

We will pay for loss resulting directly from Forgery or alteration of checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises, orders or directions to pay a sum certain in Money that are:

(i) Made or drawn by or drawn upon You; or

(ii) Made or drawn by one acting as Your agent; or that are purported to have been so made or drawn.[4]

(Emphasis added). Hiscox denied coverage, and Leicht sued. It alleged Hiscox breached its contract, and asked the circuit court to declare that the Policy covers its losses from the forged delivery tickets.[5]

¶5 Hiscox moved for summary judgment, arguing that the Policy's "Forgery or Alteration" insuring agreement did not

---

[4] The Policy emphasizes certain words to indicate they are defined terms. We have omitted the emphasis to avoid a suggestion we are assigning particular importance to those words.

[5] Leicht also named two of its other insurers, as well as Pallet Central, as defendants. However, Hiscox is the only defendant currently before the court, and so we do not address claims made against any other party.

provide coverage because the forged delivery tickets were neither "checks" nor any of the other types of documents identified by the Policy. Hiscox also argued that the forged delivery tickets were not "drawn upon" Leicht, which it said is a prerequisite to coverage. Leicht disagreed. It said the Policy covers the delivery tickets because Pallet Central used them as a means of directing payment. Therefore, it concluded, the Policy covers the delivery tickets as "directions to pay a sum certain in Money."[6]

¶6 The circuit court granted Hiscox's motion, concluding that the Policy's "Forgery or Alteration" insuring agreement did not provide coverage. The court of appeals affirmed, explaining that the Policy "enumerate[s] specific covered instruments, including checks, drafts and promissory notes, and 'similar written promises, orders or directions to pay a sum certain' in money" and that "[t]he delivery tickets Leicht relies upon were not written promises, orders or directions to pay 'similar' to the enumerated documents covered under the polic[y]." Leicht Transfer & Storage Co. v. Pallet Cent. Enter., No. 2016AP2334, unpublished slip op., ¶11 (Wis. Ct. App. Apr. 25, 2018) (per curiam). The court of appeals said the forged delivery tickets

---

[6] To the extent Leicht previously argued that coverage exists under other portions of the Hiscox policy, those arguments are not before this court and we therefore consider only the coverage question presented. See, e.g., A.O. Smith Corp. v. Allstate Ins. Cos., 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

"were merely evidence of a claim that pallets were delivered by Pallet Central to Leicht." Id., ¶¶12-13.

¶7  Leicht's petition for review asserted that the Policy's coverage of "similar written promises, orders or directions to pay a sum certain" is a "recipe for ambiguity" because "[n]othing in the policy alerts the policyholder how or why other forged documents might be similar." We granted Leicht's petition and now hold that the Policy does not afford the coverage Leicht seeks because Pallet Central's delivery tickets are not "written . . . directions to pay a sum certain in Money."

II.  STANDARD OF REVIEW

¶8  We review the disposition of a motion for summary judgment de novo, applying the same methodology the circuit courts apply. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). While our review is independent from the circuit court and court of appeals, we benefit from their analyses. See Preisler v. Gen. Cas. Ins. Co., 2014 WI 135, ¶16, 360 Wis. 2d 129, 857 N.W.2d 136. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2) (2017-18); see also Columbia Propane, L.P. v. Wis. Gas Co., 2003 WI 38,

¶11, 261 Wis. 2d 70, 661 N.W.2d 776 (quoting and applying Wis. Stat. § 802.08(2) (2001-02)).

¶9 The interpretation of an insurance policy presents a question of law. Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co., 2016 WI 54, ¶12, 369 Wis. 2d 607, 881 N.W.2d 285. We review such questions de novo. Id.

III. ANALYSIS

¶10 The Policy contains three relevant requirements that Leicht must satisfy before it is entitled to coverage for its losses. First, it must demonstrate that a "delivery ticket" is the type of document encompassed by the Policy's insuring agreement. Second, it must show that the delivery tickets were "[m]ade or drawn by or drawn upon [Leicht]; or [m]ade or drawn by one acting as [Leicht's] agent; or that are purported to have been so made or drawn." And third, it must establish that the payments it made to Pallet Central constitute a "loss resulting directly" from the forgery. To evaluate these requirements, we must discern the meaning of the Policy's insuring agreement, and how its terms apply to the facts of this case.

¶11 Our goal in interpreting and applying an insurance policy's terms is the same as it is in addressing any other contract: To "effectuate the intent of the contracting parties." Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶19, 311 Wis. 2d 548, 751 N.W.2d 845 (citations omitted). In doing so, we construe insurance contracts "as they would be understood by a reasonable person in the position of the

8

insured[,]" yet we will "not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65 (citations omitted).   We will interpret undefined words and phrases as they would be understood by a reasonable insured, Bethke v. Auto-Owners Ins. Co., 2013 WI 16, ¶22, 345 Wis. 2d 533, 825 N.W.2d 482, and "[w]e give undefined words and phrases their common and ordinary meaning."   Day v. Allstate Indem. Co., 2011 WI 24, ¶28, 332 Wis. 2d 571, 798 N.W.2d 199.   "If the undefined language is ambiguous, we will construe it in favor of the insured to afford coverage."   Bethke, 345 Wis. 2d 533, ¶22.   A term or phrase is ambiguous only if it is "'fairly susceptible to more than one reasonable interpretation.'"   Wilson Mut. Ins. Co. v. Falk, 2014 WI 136, ¶24, 360 Wis. 2d 67, 857 N.W.2d 156 (citation omitted).

¶12 We begin our analysis with Leicht's position that "delivery tickets," when combined with corresponding invoices, are included in the type of documents the Policy covers.   The insuring agreement describes covered documents as "checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises, orders or directions to pay a sum certain in Money."   Because Leicht says the delivery tickets are covered as "directions to pay a sum certain in Money," this part of the inquiry actually involves two steps.   First, we must determine whether a delivery ticket is, in fact, a direction to

9

pay a sum certain in money (alone or in conjunction with an invoice). If it is, then we must consider whether it is "similar" to "checks, drafts, promissory notes, convenience checks, [or] HELOC checks." It is a covered document only if it meets both criteria.

¶13 Neither party has suggested the phrase "directions to pay a sum certain in Money" is ambiguous. And as the following analysis will demonstrate, we espy no ambiguity in it either. Therefore, we "interpret the policy according to its plain and ordinary meaning to avoid imposing contract obligations that the parties did not undertake." Frost ex rel. Anderson v. Whitbeck, 2002 WI 129, ¶17, 257 Wis. 2d 80, 654 N.W.2d 225. The plain and ordinary meaning of the phrase unmistakably indicates that, by themselves, the delivery tickets are not "directions to pay a sum certain in Money." The documents' most obvious defect in this regard is that they contain no directions to pay. They are, instead, simple statements that Pallet Central delivered a certain type and number of pallets on a particular day. To the extent the delivery tickets contain any directions at all, they are as follows:

> [Leicht] [m]ust notify us of any quantity disputes and/or quality matters within 72 hours of delivery or credit will not be issued.

> Please use our tickets for DELIVERIES and PLEASE make three (3) copies, one for you, one for the customer and one for the driver. Have the driver fill out the ticket (truck #, trailer # and driver signature). Then PLEASE fax the filled out ticket back to me at [###-###-####].

With respect to payment, they are entirely inert, and contain no motive force whatsoever by which to direct anyone to pay anything.

¶14 The delivery tickets also conspicuously lack any reference to a "sum certain." In fact, they do not reference an amount due, or even a calculation by which one may arrive at an amount due. Indeed, they say nothing about currency, payment, or anything else one might associate with money, much less a "sum certain." Leicht conceded this point at oral argument, and further admitted it would not have paid Pallet Central if it had presented nothing but a delivery ticket. The unavoidable conclusion, therefore, is that a delivery ticket——by itself——is not a direction to pay a sum certain in money.

¶15 Nor does a delivery ticket become a direction to pay when bundled with a corresponding invoice. Leicht acknowledged that an invoice is a request for payment, not a direction to pay. So if the delivery ticket becomes a direction to pay when attached to an invoice, the combination must be capable of making the invoice package greater than the sum of its parts. But Leicht did not explain how combining the two would turn one of them (or both) into a direction to pay a sum certain in money. The best it could offer was this: "Without the signed ticket Pallet Central could not be paid. Indeed, that is why Pallet Central forged those tickets in the first place." That is likely so, and we accept Leicht's reasoning for the purpose of this analysis. But it cannot carry the weight of its

11

argument. Leicht's explanation describes a document evidencing Pallet Central's satisfaction of a condition precedent to payment. Just because the signed delivery ticket is a prerequisite to payment, however, does not transform it (or the combined documents) into a direction to pay a sum certain in money. The delivery ticket does not affect the invoice's nature (it is still a request), and the invoice does not create terms in the delivery ticket that were not there before (it still directs no payment, much less a sum certain). Combined, the documents retain the same characteristics that defined them separately: A request for payment, and proof of delivery. Consequently, the delivery ticket——whether taken on its own terms or in conjunction with an invoice——is not a direction to pay a sum certain in money.

¶16 That, however, does not address Leicht's position in full. A close examination of its arguments reveals that Leicht did not explicitly claim that a delivery ticket _is_ a direction to pay. Instead, it said "the delivery ticket[s] _represented_ a direction to pay," and that "the parties _used_ these delivery tickets to direct payment from Leicht's finance department," and that the "tickets _served as_ a written direction to Leicht's bursar to pay Pallet Central's invoices." That is to say, Leicht asserts that delivery tickets _function_ as a direction to pay.

¶17 The distinction is subtle, but no less real for that. And that distinction helps illustrate why there can be no

coverage for the forged delivery tickets. It is a commonplace that what something "is" can differ from the function to which it is put. An object might <u>be</u> a chair, and at times <u>function</u> as a very short ladder. But that does not mean the chair is a ladder. And if an insurance policy insures only against the loss of ladders, the chair owner will be disappointed. Here, the Policy applies to forgery of "directions to pay a sum certain in Money." As discussed above, the delivery tickets are unquestionably not that. Therefore, there can be no coverage unless the Policy applies to writings that are <u>not</u> "directions to pay," but which are nonetheless used for that purpose. We see nothing in the Policy, however, that grants coverage to documents not covered by its terms, but which are used as functional proxies for documents that are covered by its terms. So when Leicht says "the delivery tickets functioned as a direction to make payment, just as the policies required," it is mistaken. The Policy required a direction to pay, not a stand-in for a direction to pay.[7]

---

[7] For a similar reason, the dissent's analysis cannot reach Leicht's preferred end. The author says: "Examining the policy language in light of the parties' habitual practice, and consistent with this court's precedent, I arrive at the opposite conclusion." Dissent, ¶22. The insurance policy, of course, does not insure against loss caused by "Forgery or alteration" of Leicht and Pallet Central's "habitual practice." It insures against loss from "Forgery or alteration" of specifically described <u>documents</u>, of which a delivery ticket is not one.

The key explanation the dissent offers for its contrary conclusion is this:

(continued)

13

\*

¶18 If we had concluded that the delivery tickets, alone or in conjunction with corresponding invoices, constituted "directions to pay," we then would have needed to consider whether the Policy's insuring agreement covered only those "directions to pay" that are similar to the specifically identified documents (i.e., checks, drafts, promissory notes, convenience checks, or HELOC checks). We also would have needed to determine whether they had been "[m]ade or drawn by or drawn upon" Leicht, or were "[m]ade or drawn by one acting as [Leicht's] agent; or that [were] purported to have been so made or drawn." And finally, we would have needed to determine whether the payments induced by the forged delivery tickets comprised losses "resulting directly from" the forgery. But all of these issues are contingent on having discerned a "direction

---

> "[I]f it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck." This test suggests that something can be identified by its habitual characteristics, i.e. how it routinely functions.

Id., ¶34.

The point of the "duck" exercise is not to equate two things that are not the same. It is to identify what something really is. That is, one does not build an animatronic duck, set it afloat in a puddle with a quack soundtrack, and conclude it is an actual member of the Anatidae family. But that is what the dissent proposes here. Leicht and Pallet Central may have a private understanding that they will act as though the delivery ticket is a direction to pay a sum certain. But that does not mean we (and Hiscox) must conclude it is such a document any more than an ornithologist must conclude the floating fabrication actually is a duck.

14

to pay" in the forged delivery tickets. Because we did not, we have no need to examine these additional issues. Am. Girl, Inc., 268 Wis. 2d 16, ¶24 ("If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there."). The Policy's insuring agreement does not encompass the forged delivery tickets, and we may not add coverage for which the parties did not bargain. Id., ¶23 (citations omitted) ("[W]e do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium."). Consequently, Leicht's quest for coverage must end.

IV. CONCLUSION

¶19 We conclude that the Policy unambiguously demonstrates that the delivery tickets at issue in this case, either alone or in combination with corresponding invoices, do not qualify as "written . . . directions to pay a sum certain in Money." Further, we conclude that the Policy does not provide coverage for forged documents that are not themselves "directions to pay," but which are used as proxies for such documents. Summary judgment for Hiscox was, therefore, appropriate. We affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

**Pallet Central Enterprises, Inc.**
*Your Nationwide Pallet Network*
P. O. Box 550969
Atlanta, GA 30555
Toll Free 1-866-870-1184
Ph. 404-564-9700
Fax 404-814-1619

# Delivery Ticket

| Date | Delivery Ticket No. |
|---|---|
| 1/7/2015 | 68505 |

**Bill To:**
Leicht Warehousing
1401 States Street
Green Bay, WI 54304

**Ship To:**
Leicht Warehousing
2121 American Blvd
DePere, WI 54115
920-983-6539

| Customer Contact | Customer Phone | Cust. P.O. No. | Ship Date | Ship Via |
|---|---|---|---|---|
| | 920-983-6539 | Verbal | 1/17/2015 | Own Truck |

| Item | Description | Ordered | Unit | Reference # | Freight PO # |
|---|---|---|---|---|---|
| 48 x ... | 48 x 40 B Grade Pallets per approved spec - Drop Trailer – Must Secure First 2 Stacks by Trailer Doors – Must Have Black Paint Stripe Sales Tax. | 520 | Each | 737254 | |

**Please note:**
Must notify us of any quantity disputes and/or
quality matters within 72 hours of delivery or credit will not be issued.

Please use our tickets for DELIVERIES and PLEASE make three (3) copies, one for you, one for the customer and one for the driver. Have the driver fill out the ticket (truck #, trailer # and driver signature). Then PLEASE fax the filled out ticket back to me at 404-814-1619.
Thank You.

Truck # _____1_____     Signature _____

Trailer # _____319_____     Print Name _____

Date _____1-17_____

EXHIBIT
5

# Invoice

**Pallet Central Enterprises, Inc.**
*Your Nationwide Pallet Network*
PO Box 550969
Atlanta, GA 30355
Toll Free 1-866-870-1184
Ph. 404-564-9700
Fax 404-814-1619

| Date | Invoice # |
|------|-----------|
| 1/17/2015 | 67175 |

**Bill To**

Leicht Warehousing
1401 States Street
Green Bay, WI 54304

**Ship To**

Leicht Warehousing
2121 American Blvd
DePere, WI 54115
920-983-6539

| Vendor ID | P.O. Number | Terms | Rep | Delivery Ticket | Due Date |
|-----------|-------------|-------|-----|-----------------|----------|
| | Verbal | Net 30 | TS | 68505 | 2/16/2015 |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 520 | 48 x 40 B G... | 48 x 40 B Grade Pallets per approved spec - Drop Trailer - Must Secure First 2 Stacks by Trailer Doors - Must Have Black Paint Stripe | 4.69 | 2,438.80T |
| | | Sales Tax | 5.50% | 134.13 |

Please note:
Payment must be received within terms or a 1.5% late fee will be charged.

**Total** $2,572.93

*19*

¶20 ANN WALSH BRADLEY, J. *(dissenting).* This case arose after Pallet Central Enterprises, Inc. submitted fraudulent invoices to Leicht Transfer & Storage Company for nonexistent pallets that were never delivered. Majority op., ¶3. Leicht purchased a crime insurance policy to protect itself against precisely this type of fraudulent activity. Nevertheless, the majority denies coverage, sticking Leicht with a half million dollar bill for losses that resulted from Pallet Central Enterprises, Inc.'s fraudulent scheme.

¶21 The majority can reach its conclusion only by disregarding long-held principles of insurance policy interpretation——which we call precedent. It is firmly established that an insurance policy's terms are to be interpreted as they would be understood from the perspective of a reasonable person in the position of the insured. Shugarts v. Mohr, 2018 WI 27, ¶20, 380 Wis. 2d 512, 909 N.W.2d 402 (citation omitted). Likewise, it is well-settled that ambiguity in an insurance policy is construed in favor of an insured seeking coverage. Olson v. Farrar, 2012 WI 3, ¶42, 338 Wis. 2d 215, 809 N.W.2d 1 (citation omitted).

¶22 Casting these principles aside, the majority determines that Leicht is not entitled to insurance coverage for losses incurred due to the fraudulent actions of Pallet Central. Examining the policy language in light of the parties' habitual practice, and consistent with this court's precedent, I arrive at the opposite conclusion.

¶23 Accordingly, I respectfully dissent.

1

I

¶24 For a period of over two years, Leicht purchased pallets for its warehouse from Pallet Central. Majority op., ¶2. As the majority accurately details, Leicht and Pallet Central "followed a standard practice for documenting these transactions for the purpose of inventory control and billing." Id.

¶25 Pursuant to this practice, each time Pallet Central made a delivery of pallets, it would give to Leicht a delivery ticket. Id. The delivery ticket described the shipment of pallets, identified the number of pallets delivered, specified the delivery date, and provided the identification number of the trailer on which the pallets arrived. Id. A Leicht employee would then sign the delivery ticket, indicating the pallets had been received. Id.

¶26 After the delivery ticket had been signed, Pallet Central would prepare an invoice package that included the signed delivery ticket. Id. Leicht would then pay Pallet Central for the delivery, but only if the invoice was accompanied by a signed delivery ticket. Id.

¶27 When it came to light that Pallet Central submitted invoices to Leicht for nonexistent pallets that were never delivered, an investigation ensued. It revealed that Leicht employees' signatures on the delivery tickets had been forged. Id., ¶3. This caused Leicht to suffer a loss of approximately $505,000 from paying the fraudulent invoices. Id.

2

¶28 Leicht carried a crime insurance policy. As relevant here, the policy provides:

(1) Checks

**We** will pay for loss resulting directly from **Forgery** or alteration of checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises, orders or directions to pay a sum certain in **Money** that are:

(i) Made or drawn by or drawn upon **You**; or

(ii) Made or drawn by one acting as **Your** agent;

or that are purported to have been so made or drawn.

¶29 The majority determines that Leicht is not entitled to coverage under this provision of the policy. It concludes that a "delivery ticket——whether taken on its own terms or in conjunction with an invoice——is not a direction to pay a sum certain in money." Majority op., ¶15. In the majority's view, the delivery ticket contains no direction to pay and no reference to a sum certain. Id., ¶14. Further, it opines that coverage does not attach to a signed delivery ticket that functions as a direction to pay, but is not itself a direction to pay. Id., ¶¶16-17.

II

¶30 As I see it, the language of the policy creates several conditions that the signed delivery ticket at issue in this case must fulfill in order for coverage to attach. First, the signed delivery ticket must be a written promise, order or direction to pay a sum certain in money. Second, it must be similar to a check, draft, promissory note, convenience check,

3

or HELOC checks. Finally, as provided in the crime insurance policy, the signed delivery ticket must be "[m]ade or drawn by or drawn upon [Leicht], [m]ade or drawn by one acting as [Leicht's] agent; or [was] purported to have been so made or drawn."[1]

A

¶31 I address first whether a signed delivery ticket is, as interpreted by reasonable person in the position of the insured, a "direction to pay" a sum certain in money.

¶32 It is imperative that our review of the language of an insurance policy be through the lens of a reasonable insured. Shugarts, 380 Wis. 2d 512, ¶20. The insured, Leicht, was engaged in a repeated and specific process by which payment was directed by the submission of certain documents, namely a signed delivery ticket and invoice.

¶33 Given the habitual practice the parties followed in their transactions, a reasonable insured in Leicht's position would understand that a signed delivery ticket serves as a "direction to pay." Indeed, the record reflects that an unsigned delivery ticket would not be paid, unlike a signed ticket that would be paid. Accompanying a signed delivery ticket is an invoice containing a sum certain for payment. The parties' habitual routine was that this package of documents would direct that payment be made.

---

[1] Because it determines that a signed delivery ticket is not a direction to pay a sum certain in money, the majority does not address the second and third issues I raise.

¶34 The majority departs from the language as viewed by a reasonable insured engaging in the habitual practice of these parties. Simply put, its technical and theoretical distinction between what a signed delivery ticket "is" and its "function" not only discards our precedent on insurance policy interpretation, but it also fails an elementary test. See majority op., ¶¶16-17. Namely, "if it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck." This test suggests that something can be identified by its habitual characteristics, i.e. how it routinely functions.

¶35 The bottom line is that the habitual practice of the parties established that a signed delivery ticket directed payment. It is from this perspective that we must examine the policy's language. Viewing the parties' habitual practice from Leicht's point of view, I determine that a signed delivery ticket fulfills the policy's requirement of a "direction to pay" a sum certain in money.

B

¶36 I turn next to address whether a signed delivery ticket is "similar" to the instruments listed in the policy: checks, drafts, promissory notes, convenience checks, or HELOC checks.

¶37 In addressing this question, another maxim of insurance policy interpretation must be considered. Namely, ambiguous terms must be construed in favor of coverage, and against the drafter. Olson, 338 Wis. 2d 215, ¶42; see Maryland

5

Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶44, 326 Wis. 2d 300, 786 N.W.2d 15 (citation omitted).

¶38 The policy uses the term "similar." Inherent in the term "similar" is a certain amount of ambiguity. It begs the question, how similar is similar enough? The text of the policy provides no guidance.

¶39 As Leicht aptly argued in its brief, "[n]o policyholder can know with certainty what documents are similar to a check, to a draft, or to a promissory note, and conversely, no policyholder can surmise what written 'promises, orders, or directions for payment' are too dissimilar for coverage to apply."

¶40 I agree with Leicht. As analyzed above, a reasonable insured would believe that a signed delivery ticket "directs payment" within the language of the policy. But under the language of this policy, a policyholder is left guessing whether such a "direction to pay" is covered if it is not explicitly listed. Construing the ambiguity in favor of coverage, as our precedent requires, I determine that a signed delivery ticket fulfills the policy's "similarity" requirement.

C

¶41 The next inquiry raised by the policy language is whether the signed delivery ticket is "[m]ade or drawn by or drawn upon [Leicht], [m]ade or drawn by one acting as [Leicht's] agent; or [was] purported to have been so made or drawn."

¶42 Leicht alleges that the signatures of Leicht employees on delivery tickets were forged. That is, the signatures were "purported to have been" made by Leicht employees.

¶43 Further, the forged signatures were purportedly made by Leicht employees acting as Leicht's agents. "Agent" is not a defined term in the policy, meaning that we interpret it as it would be understood by a reasonable insured. Acuity v. Bagadia, 2008 WI 62, ¶13, 310 Wis. 2d 197, 750 N.W.2d 817 (citation omitted).

¶44 An employee acting on behalf of an employer is the employer's agent. See Romero v. West Bend Mut. Ins. Co., 2016 WI App 59, ¶39, 371 Wis. 2d 478, 885 N.W.2d 591 (citation omitted). By forging signatures on delivery tickets, Pallet Central employees purported to be acting as Leicht employees, thereby confirming receipt of pallets that were never delivered and directing Leicht to pay for them.

¶45 In sum, properly examining the policy as would a reasonable person in the position of the insured, I conclude that all conditions for coverage are fulfilled. Specifically, a forged signed delivery ticket is a similar written promise, order or direction to pay a sum certain that was purported to have been made by Leicht's agent.

¶46 Accordingly, I respectfully dissent.

7