ANN WALSH BRADLEY, J. (dissenting).
*112 ¶20 This case arose after Pallet Central Enterprises, Inc. submitted fraudulent invoices to Leicht Transfer & Storage Company for nonexistent pallets that were never delivered. Majority op., ¶3. Leicht purchased a crime insurance policy to protect itself against precisely this type of fraudulent activity. Nevertheless, the majority denies coverage, sticking Leicht *543 with a half million dollar bill for losses that resulted from Pallet Central Enterprises, Inc.'s fraudulent scheme.
¶21 The majority can reach its conclusion only by disregarding long-held principles of insurance policy interpretation-which we call precedent. It is firmly established that an insurance policy's terms are to be interpreted as they would be understood from the perspective of a reasonable person in the position of the insured. Shugarts v. Mohr, 2018 WI 27, ¶ 20, 380 Wis. 2d 512, 909 N.W.2d 402 (citation omitted). Likewise, it is well-settled that ambiguity in an insurance policy is construed in favor of an insured seeking coverage. Olson v. Farrar, 2012 WI 3, ¶ 42, 338 Wis. 2d 215, 809 N.W.2d 1 (citation omitted).
¶22 Casting these principles aside, the majority determines that Leicht is not entitled to insurance coverage for losses incurred due to the fraudulent actions of Pallet Central. Examining the policy language in light of the parties' habitual practice, and consistent with this court's precedent, I arrive at the opposite conclusion.
¶23 Accordingly, I respectfully dissent.
I
¶24 For a period of over two years, Leicht purchased pallets for its warehouse from Pallet Central. Majority op., ¶2. As the majority accurately *113 details, Leicht and Pallet Central "followed a standard practice for documenting these transactions for the purpose of inventory control and billing."Id.
¶25 Pursuant to this practice, each time Pallet Central made a delivery of pallets, it would give to Leicht a delivery ticket. Id. The delivery ticket described the shipment of pallets, identified the number of pallets delivered, specified the delivery date, and provided the identification number of the trailer on which the pallets arrived. Id. A Leicht employee would then sign the delivery ticket, indicating the pallets had been received. Id.
¶26 After the delivery ticket had been signed, Pallet Central would prepare an invoice package that included the signed delivery ticket. Id. Leicht would then pay Pallet Central for the delivery, but only if the invoice was accompanied by a signed delivery ticket. Id.
¶27 When it came to light that Pallet Central submitted invoices to Leicht for nonexistent pallets that were never delivered, an investigation ensued. It revealed that Leicht employees' signatures on the delivery tickets had been forged. Id., ¶ 3. This caused Leicht to suffer a loss of approximately $ 505,000 from paying the fraudulent invoices. Id.
¶28 Leicht carried a crime insurance policy. As relevant here, the policy provides:
(1) Checks
We will pay for loss resulting directly from Forgery or alteration of checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises, orders or directions to pay a sum certain in Money that are:
*114 (i) Made or drawn by or drawn upon You ; or
(ii) Made or drawn by one acting as Your agent;
or that are purported to have been so made or drawn.
¶29 The majority determines that Leicht is not entitled to coverage under this provision of the policy. It concludes that a "delivery ticket-whether taken on its own terms or in conjunction with an invoice-is not a direction to pay a sum certain in money." Majority op., ¶15. In the majority's view, the delivery ticket contains no direction to pay and no reference to a sum certain. Id., ¶ 14. Further, it opines that *544 coverage does not attach to a signed delivery ticket that functions as a direction to pay, but is not itself a direction to pay. Id., ¶¶ 16-17.
II
¶30 As I see it, the language of the policy creates several conditions that the signed delivery ticket at issue in this case must fulfill in order for coverage to attach. First, the signed delivery ticket must be a written promise, order or direction to pay a sum certain in money. Second, it must be similar to a check, draft, promissory note, convenience check, or HELOC checks. Finally, as provided in the crime insurance policy, the signed delivery ticket must be "[m]ade or drawn by or drawn upon [Leicht], [m]ade or drawn by one acting as [Leicht's] agent; or [was] purported to have been so made or drawn."[1]
*115 A
¶31 I address first whether a signed delivery ticket is, as interpreted by reasonable person in the position of the insured, a "direction to pay" a sum certain in money.
¶32 It is imperative that our review of the language of an insurance policy be through the lens of a reasonable insured. Shugarts, 380 Wis. 2d 512, ¶ 20, 909 N.W.2d 402. The insured, Leicht, was engaged in a repeated and specific process by which payment was directed by the submission of certain documents, namely a signed delivery ticket and invoice.
¶33 Given the habitual practice the parties followed in their transactions, a reasonable insured in Leicht's position would understand that a signed delivery ticket serves as a "direction to pay." Indeed, the record reflects that an unsigned delivery ticket would not be paid, unlike a signed ticket that would be paid. Accompanying a signed delivery ticket is an invoice containing a sum certain for payment. The parties' habitual routine was that this package of documents would direct that payment be made.
¶34 The majority departs from the language as viewed by a reasonable insured engaging in the habitual practice of these parties. Simply put, its technical and theoretical distinction between what a signed delivery ticket "is" and its "function" not only discards our precedent on insurance policy interpretation, but it also fails an elementary test. See majority op., ¶¶16-17. Namely, "if it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck." This test suggests that something can be identified by its habitual characteristics, i.e. how it routinely functions.
*116 ¶35 The bottom line is that the habitual practice of the parties established that a signed delivery ticket directed payment. It is from this perspective that we must examine the policy's language. Viewing the parties' habitual practice from Leicht's point of view, I determine that a signed delivery ticket fulfills the policy's requirement of a "direction to pay" a sum certain in money.
B
¶36 I turn next to address whether a signed delivery ticket is "similar" to the instruments listed in the policy: checks, drafts, promissory notes, convenience checks, or HELOC checks.
¶37 In addressing this question, another maxim of insurance policy interpretation must be considered. Namely, ambiguous terms must be construed in favor of coverage, *545 and against the drafter. Olson, 338 Wis. 2d 215, ¶ 42, 809 N.W.2d 1 ; see Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶ 44, 326 Wis. 2d 300, 786 N.W.2d 15 (citation omitted).
¶38 The policy uses the term "similar." Inherent in the term "similar" is a certain amount of ambiguity. It begs the question, how similar is similar enough? The text of the policy provides no guidance.
¶39 As Leicht aptly argued in its brief, "[n]o policyholder can know with certainty what documents are similar to a check, to a draft, or to a promissory note, and conversely, no policyholder can surmise what written 'promises, orders, or directions for payment' are too dissimilar for coverage to apply."
¶40 I agree with Leicht. As analyzed above, a reasonable insured would believe that a signed delivery ticket "directs payment" within the language of the *117 policy. But under the language of this policy, a policyholder is left guessing whether such a "direction to pay" is covered if it is not explicitly listed. Construing the ambiguity in favor of coverage, as our precedent requires, I determine that a signed delivery ticket fulfills the policy's "similarity" requirement.
C
¶41 The next inquiry raised by the policy language is whether the signed delivery ticket is "[m]ade or drawn by or drawn upon [Leicht], [m]ade or drawn by one acting as [Leicht's] agent; or [was] purported to have been so made or drawn."
¶42 Leicht alleges that the signatures of Leicht employees on delivery tickets were forged. That is, the signatures were "purported to have been" made by Leicht employees.
¶43 Further, the forged signatures were purportedly made by Leicht employees acting as Leicht's agents. "Agent" is not a defined term in the policy, meaning that we interpret it as it would be understood by a reasonable insured. Acuity v. Bagadia, 2008 WI 62, ¶ 13, 310 Wis. 2d 197, 750 N.W.2d 817 (citation omitted).
¶44 An employee acting on behalf of an employer is the employer's agent. See Romero v. West Bend Mut. Ins. Co., 2016 WI App 59, ¶ 39, 371 Wis. 2d 478, 885 N.W.2d 591 (citation omitted). By forging signatures on delivery tickets, Pallet Central employees purported to be acting as Leicht employees, thereby confirming receipt of pallets that were never delivered and directing Leicht to pay for them.
¶45 In sum, properly examining the policy as would a reasonable person in the position of the insured, I conclude that all conditions for coverage are *118 fulfilled. Specifically, a forged signed delivery ticket is a similar written promise, order or direction to pay a sum certain that was purported to have been made by Leicht's agent.
¶46 Accordingly, I respectfully dissent.

Because it determines that a signed delivery ticket is not a direction to pay a sum certain in money, the majority does not address the second and third issues I raise.